## JAMES F. VANCE V. THE STATE.

### *No. 624.   Decided April 27.*

1. **Transcript on Change of Venue—Order Impaneling Grand Jury.**— Neither under the statutory provision of Code of Criminal Procedure, article 595, with regard to the making up of the transcript on change of venue, nor article 860, with regard to transcripts on appeal, is it required that the order of the court impaneling the grand jury should be embraced as part of the same.

2. **Change of Venue—Matters Preliminary to—Certiorari.**—Article 580, Code of Criminal Procedure, requires, that all questions which do not affect the substance of the change must be made before defendant applies for a change of venue, and hence it is apparent that a certiorari issued by this court after the change, and to the clerk of the county to which it has been changed, could not correct the record as to such preliminary matters in the original county of the prosecution.

3. **Same—Jurisdiction—Constitutional Law—Imperfect Record—Grand Jury.**—The Constitution, article 5, section 6, confers authority upon the appellate court to ascertain such matters of fact, by affidavit or otherwise, as may be necessary to the exercise of its jurisdiction, and this independently of the record on appeal. *Held,* that when a record on appeal shows that the grand jury finding and returning a bill of indictment was composed of only eleven men, and an issue is raised as to the correctness of the record in this respect, this court can and will appeal to the records of the original tribunal in which the indictment originated to ascertain the truth of the matter in support of its jurisdiction; and when the clerk of the county in which the indictment was found certifies that the transcript on change of venue has misstated the fact as to the number of persons comprising the grand jury, that said grand jury was in fact composed of the legal number of qualified persons, and said certificate is not controverted, this court will take it, that the said certificate speaks the truth, and that the grand jury was in fact a legal grand jury.

4. **Theft—Defense of Ownership—Refused Instructions.**—On a trial for theft of one head of cattle, where the defense was, that the animal was the property of defendant or of his mother, and that he had the right to take it, *Held*, that the failure of the court to give a substantive charge upon this defensive matter, which failure was excepted to by defendant, and the further refusal of requested instructions upon said defense, which was also excepted to, will constitute reversible error.

APPEAL from the District Court of Baylor. Tried below before Hon. W. R. McGILL.

This appeal is from a conviction for theft of one head of cattle, the punishment being assessed at imprisonment for two years and nine months in the penitentiary.

The essential matters pertaining to the grand jury which found the indictment are fully stated in the opinion.

Defendant was charged by indictment in King County with the theft of one head of cattle, the property of J. T. George. The venue was changed from King County to the county of Baylor. The evidence showed, that said George owned a certain red yearling with a bald face, some white on its leg, branded C on left side of neck and T C on left side. On the 4th day of June, 1894, the cow, mother of the yearling, came up without her yearling. Said George and daughter went out to look for the yearling, and about one-half mile from defendant's house found where some one had killed a beef, leaving on the ground the hide and head. The brand on side was cut out; the C brand was left on neck; the ears were cut off. Both recognized the flesh marks as George's yearling. They followed the tracks of a wagon from the place to defendant's house, and found the four quarters of a beef hanging in a mesquite tree near the house of defendant, and blood on the hounds of the wagon. George said to defendant, "I see you have a beef," and asked defendant who had killed a beef out there, pointing to the place where he found the hide. Defendant admitted that he killed a beef out there. "I asked him whose beef it was that he had killed, and he said it was his (defendant's.)"

Mrs. Vance, mother of and who lived with defendant, testified to owning cattle on the range, and among them a yearling of that description; that her son, defendant, had control of them, and a right to kill a beef of them whenever he chose; she had not seen that yearling since the killing of the beef in controversy.

The court, in his charge to the jury, failed and refused to submit the issue of ownership as raised by the evidence, and also as to defendant's explanation of his possession, at the first time he was accosted after killing the beef and asked directly whose beef it was that he had killed.

*Holman & Glascow*, for appellants.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—The indictment in this case was presented in King County, and was sent to Baylor County on a change of venue. The appellant was there tried and convicted of theft of one head of cattle, and his punishment assessed at two years and nine months in the penitentiary, and from the judgment and sentence of the lower court he prosecutes this appeal.

The appellant contends in this case that the court below which tried the cause had no jurisdiction, and that this court has no jurisdiction on appeal to try said case, because the record, as sent up from the District Court of Baylor County, shows that the grand jury which found the indictment in this case was composed only of eleven men. In reply to the motion of the appellant to dismiss said case for want of jurisdiction, the Attorney-General moves this court to expunge from the record so much thereof as shows the impanelment of the grand jury in King County, contending that same is no part of the record required to be sent from King to Baylor County, in the first instance, or required to be sent up to this court from Baylor County; and he also insists, if this court refuses to strike out said portion of the record, that the court look to the certificate from the clerk of the District Court of King County, furnished the Attorney-General, on request, showing that in fact twelve jurors were impaneled and found the indictment in this cause in King County, or, if deemed proper, that the court hear affidavits in support of its jurisdicton. This motion is resisted by the appellant. The transcript sent up from Baylor County does contain the impanelment of the grand jury in King County which found the indictment in this case, and shows that said grand jury consisted of but eleven persons. The Constitution (article 5, section 13) requires, that the grand jury shall consist of twelve qualified persons, and it has accordingly been so held by this court. So, if it be shown that in fact but eleven persons constituted the grand jury which found the bill of indictment in this case, this court has no jurisdiction, and the case must be dismissed.

We are referred by the Attorney-General to the Code of Criminal Procedure, article 585, which requires the clerk, on a change of venue, to make out a true transcript of all the orders made in the case, and certify thereto, under his official seal, then transmit the same, together with all the original papers in the case, to the clerk of the co which the venue has been changed; and also refers us to which embraces the matter required to constitute the tra appeal from the trial court to this court. From th that neither on a change of venue, nor in making appeal, is the order of the court impaneling the to be embraced in the record, nor would this co motion, if said order of the impanelment did n to issue a certiorari to the court below for suc of the grand jury. Fuller v. The State, 19 But it is insisted by appellant, that however

affirmatively appear by the transcript sent to this court from the trial court that but eleven persons constituted the grand jury in this case, and that, inasmuch as the orders of this court for certiorari or other writ could only operate on the trial court, if this court were authorized to issue a certiorari or other writ it could only do so to the county of the trial court, and another certificate from that court would only verify the record in this case, and that by no possibility can this court seek information as to the jurisdiction of fact in the county from which the venue was changed. We understand it to be admitted, that if this question had been made in the court below, then it would have been competent for that court to have supported its jurisdiction by proper writs to the court from which the cause had been transferred, and that, this not having been done, this court can not go behind the record in the trial court.

By reference to article 580, Code of Criminal Procedure, it will be seen, that it is required in all cases that all matters which do not affect the substance of the change must be made before defendant applies for a change of venue in the case. Caldwell v. The State, 41 Texas, 86; Ex Parte Cox, 12 Texas Crim. App., 665. In the first mentioned case, which was a change of venue from Limestone to Falls County, the record on a change of venue did not show that the indictment was returned in the court by the grand jury. It appeared, however, that the records in Limestone County had been burned, and the indictment, before the transfer, had been substituted without objection, and the substituted indictment transferred, and the case tried without objection, but the transcript did not show the presentation of the indictment. The court in that case say: "Had there been any doubt about the authenticity of the substitute as a valid indictment, the original of which had been properly returned into court, it would have been appropriately called in question by the defendant before the change of venue. Then the court would have had ample oppor-tunity of ascertaining the authenticity of its own records, and, if necessary, of supplying the loss of any order that might be necessary to make a complete record of all the proceedings in this case, from its inception. The defendant continually recognized it as a pending charge against him from the time of its substitution until his trial ~~and conviction~~ in Falls County at the March Term, 1874." The court ~~have~~ also decided, that "While the statute before quoted re~~quires defendant~~ to be arraigned, and a plea of not guilty entered, ~~the record not~~ showing that such had been done, the arraignment ~~in the court~~ to which the cause was transferred, and a plea ~~was entered.~~" The court further say: "This shows ~~we hold~~ that all questions relating to the form of the ~~charge, and not~~ relating to the substance of the charge which ~~he desire~~ to make, must be made by him before he ~~applies for~~ a change of venue, and that all that is left ~~for the~~ court to which the case is removed is to

try the issue joined upon a plea of not guilty, and pronounce judgment thereon according to law.'' We do not wish to be understood as holding that a jurisdictional question can not be raised for the first time in this court, but we cite these authorities to show that the proper practice would have been to have raised this question in the first instance in the court in which the indictment was found in this case. If not raised then, it should have been raised in the court to which the venue had been changed; and, if the record had disclosed the want of a jurisdictional fact, it could have been remedied, and the truth ascertained, in either court. In this case the record proper—that is, such record papers as are required to be embraced in the transcript on a change of venue and in the transcript on appeal—does not show a want of jurisdiction in either of said tribunals, or in this court; but same is attacked in this instance by a paper in the record which constitutes in reality no part of the record, and, as we have seen, could not be made a part of the record by a writ of certiorari, so that we can treat the same as of no higher or greater efficacy than we would an affidavit of the fact showing a want of jurisdiction, and such affidavit or certificate can be rebutted, contradicted, or explained by other certificates or affidavits. Nor are we confined to the record of the trial court alone, but we can appeal to the records of the original tribunal in which the indictment originated, for, if it were otherwise, this court would be powerless indeed when its jurisdiction is attacked, as it appears to have been in this instance. Happily, we are not without such authority to make an investigation of the truth of the matter in order to ascertain our jurisdiction. The Constitution (article 5, section 6) provides, ''The Court of Appeals shall have power upon affidavits or otherwise, as by the court may be thought proper, to ascertain such matters of fact as may be necessary to the exercise of its jurisdiction.'' And see Simmons v. Fisher, 46 Texas, 127.

In connection with the motion of the Attorney-General, he has filed a certificate of the district clerk of King County, showing that in fact a legal grand jury of twelve qualified persons was impaneled in said King County, and found the bill of indictment in this case, and that the certificate of transfer, showing that there were eleven, which was sent to Baylor County, did not in fact speak the truth, but was a mistake. This certificate was brought to the attention of appellant and his counsel, and he has not sought to controvert the fact. Therefore, we take it that such certificate speaks the truth, and that the indictment in question was found and presented in King County by a legal grand jury, and that the court below had jurisdiction to try the cause, and a motion to dismiss same in this court is overruled.

The only other question in the case necessary to be considered by us is whether or not the court below erred in failing to charge the jury on the matter of defense set up by defendant in the lower court. The defense set up there was that the animal in question was the property of appellant, or of his mother, which he had a right to take; and he

introduced some proof tending to show such claim, and besides, made explanations to the same effect at the time his right to the property was first questioned. The court gave no substantive charge on this defensive matter. The defendant excepted to a failure of the court to so charge, and besides, asked such charges, and excepted to the refusal of the court to give them. In Spencer v. The State, tried at last Dallas Term, 1895 (ante, p. 65), which was a case of theft of cotton, and where the defendant relied on ownership, as having raised the cotton himself, the court there charged the jury as follows: "By 'fraudulently taking' is meant, that the person taking knew at the time of the taking that the property was not his own;" and further required the jury to believe, beyond a reasonable doubt, that the three bales of cotton were the property of T. J. Sanders before they should convict the defendant. In that case there was no exception to the charge, nor was any charge asked embodying the substantive defense set up. The court there say, "The charges, as given, evidently and unquestionably involve the title to the property," and it is held, that the issue of title was properly submitted to the jury, in the absence of any exception taken on the part of the defendant. In this case, however, no such charge was given; and, as we have seen, an exception was taken to the refusal of the court to give a charge on the defense set up, and charges were asked by the appellant presenting his defense, and exception taken to the refusal of the court to give same. In our opinion, the action of the court in this regard was such error as should cause the reversal of this case, and the judgment is accordingly reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.