[Filed October 30, 1888.]

## STATE OF OREGON, RESPONDENT, *v.* JOHN D. HUN-SAKER, APPELLANT.

WITNESS—IMPEACHMENT.—Before a party against whom a witness is called can impeach him by proving contradictory statements of the witness, he must, while the witness is on the stand, call his attention to such statements, reminding him of the time, place, and persons present, and give him an opportunity to explain them.

EVIDENCE IN CHIEF—REBUTTAL.—In a criminal case the State cannot be permitted to withhold a part of its evidence in chief, and then introduce it in rebuttal after the defendant had rested his case.

EVIDENCE.—Power of the court to examine in criminal cases far enough to see whether or not there is any evidence to sustain a conviction stated but not decided.

APPEAL from Grant County.

*M. D. Clifford,* for Respondent.

*H. B. Nicholas,* for Appellant.

STRAHAN, J.—On the sixteenth day of November, 1887, the defendant was indicted by the grand jury of Grant County, Oregon, for the crime of larceny, by stealing a horse. At the April term, 1888, of the Circuit Court of that county, he was tried before a jury and found guilty, and sentenced to the penitentiary, from which judgment he has appealed to this court. Upon the argument here there was no appearance by the district attorney, and we are therefore compelled to proceed to consider the case without the assistance of that officer; but as far as practicable, we have endeavored to examine fully the questions made by the appellant and relied upon here, and I will now proceed to state the result of such examination.

There was some testimony on the part of the State tending to prove that one M. Roach and Abe Sharp had formerly been in the business of raising horses together; that when they divided the horses this one, or one resembling him very much, fell to Roach; that Roach's portion was branded thus: –U, and Sharp's thus: U–; that the horse in question was afterwards found in the possession of the defendant, who claimed the same, or that

he had "long eared" him, and that the brand had been changed by having another brand placed over it.

Abe Sharp was called as a witness in behalf of the defendant, and testified in substance: "The increase was divided in 1886. I think we divided sometime in June, 1886. All the increase that fell to Roach was branded thus: –U, and mine was branded thus: U–. The U was two inches long. There was not one branded down near the bar of Roach's iron two inches long, with scant of two inches. I don't think the animal in dispute is among Roach's share. There's some resemblance. Ramsey is mistaken in the horse. I know 'the mule.' This is not 'the mule.' The horse called 'the mule' was Roach's individual horse. This horse resembled 'the mule.' I did the main riding on the range. Roach and I were partners. I have seen horses as badly branded as this one."

After the defendant had rested his case, the district attorney recalled Mr. Ramsey, and asked him the following question: "State whether or not, during the month of July, 1886, at your place at Haystack, in Grant County, Oregon, you had a conversation with Abe Sharp, in which Abe Sharp said to you: 'Roach got the mule in the division of the horses,' or words to that effect?" To this question defendant's counsel objected, among other things, for the reason that no proper foundation had been laid for such question, by calling Sharp's attention to such conversation while he was on the stand, reminding him of time, place, persons present, etc. To this objection the district attorney said that this question was not asked the witness for the purpose of impeaching Abe Sharp, but for the purpose of contradicting him. The court thereupon overruled the objections, and the defendant's counsel saving proper exceptions, the witness answered: "Yes; I think it was that time, if I am not mistaken. It might have been the first of August, but I think it was that time."

1. The witness attacked by this question was not the State's witness, and he is not therefore within the rule prescribed by section 838 of Hill's Code, as to contradicting a party's own witness. This was plainly an attack by the party against whom

the witness was called for the purpose of his impeachment, and nothing else, and must be governed by the rules of law applicable to the law of impeachment. These are concisely declared by sections 840 and 841 of Hill's Code. These sections introduce no new principles. They are simply declaratory of the common law upon that subject. (*Sheppard* v. *Yocum*, 10 Or. 402; 1 Greenleaf on Evidence, § 462, and note; Stephen's Digest of Evidence, art. 131.) The court manifestly erred in allowing this question to be answered. Its effect, and only effect, was to impeach Abe Sharp, and this could not be done by proving contradictory statements, without first calling his attention, giving its substance, and mentioning the time, place, and persons present, etc., for the purpose of giving him an opportunity to offer such explanation as he might in relation to the alleged contradiction. This evidence was illegally placed before the jury. It is not for us to say what effect it had upon their minds. It is enough if it was illegally before them. It was of such a character that it might have proven highly prejudicial to the defendant. In such case we have no discretion, but must reverse the judgment and award a new trial.

2. Another error which would also require a reversal was committed by the introduction of the testimony of Joseph Putnam, claimed by the district attorney to be in rebuttal. Numerous witnesses, both for the State and the defendant, were called, who described minutely and with particularity the brand on the animal in question, and then after the defendant had rested Joseph Putnam was called by the State. The record recites *in rebuttal*, and he was asked a number of questions as to the appearance of the brands on the horse in dispute by the district attorney, over the objections of the defendant. I think this was improper. The State was bound to exhaust its evidence in chief before the defendant's witnesses could be heard.

After the defendant had closed his evidence the State could not re-open the case and give additional evidence to support its case without special leave of the court, obtained for that purpose, which was not done. This evidence was in no sense *rebuttal*. It was cumulative evidence, tending to support the

State's contention, and ought to have been introduced in chief, and before the State rested.   (Hill's Code, § 196, subds. 2, 3.)

The transcript does not purport to contain all of the evidence, nor would we feel called upon to review it if it did; but so far as appears from the evidence contained in the record, proof of a felonious intent or taking seems to be wanting.   The defendant had the animal in dispute in his possession, and claimed it as his own.   If he made the claim in good faith he could not be guilty of larceny, although the jury may have been of the opinion the animal belonged to Roach.   So far as I am able to discover, the case seems to have been tried upon the theory that if the animal belonged to Roach the defendant was guilty of larceny.   While it has not generally been the practice of this court to look into the evidence in criminal cases to see whether the verdict is justified by it or not, still I think the power of the court to do so, or at least to examine the record far enough to see whether or not there is any evidence to support a conviction, is beyond question.   But we do not consider or decide that matter now.

The judgment of the court below will be reversed, and a new trial awarded.