## T. F. HICKOX V. THE STATE.

### No. 9743.   Delivered May 5, 1926.

#### Rehearing denied June 23, 1926.

**1.—Murder—Change of Venue—Transcript—Practice. on Appeal.**

Where, on a trial for murder, the venue having been changed from Upton County to Nolan County, appellant for the first time, in this court, complains that the transcript contains no order transferring the cause, such complaint will not be entertained. Not having raised the point in limine, or reserved any exception in the trial court to said action, appellant will not be heard to complain. See Art. 744, Vernon's C. C. P. Following Terrell v. State, 174 S. W. 1089, and Vance v. State, 34 Tex. Crim. Rep. 395.

**2.—Same—Argument of Counsel—No Error Disclosed.**

Eighteen bills of exception complain of argument made by counsel for the state. No comments· appear in appellant's brief, nor any authorities cited in connection with any of these complaints of the argument. The matters complained of are in no instance self-evident, or unfair deductions from matters which might be in the record, nor do they manifest or bring before the jury any matters dehors the record.

**3.—Same—Evidence—Part of Transaction—Properly Admitted.**

Where acts and declarations of parties and of the deceased which occurred during the difficulty which finally resulted in the killing of deceased, are pertinent to the transaction, they are properly admissible. See former appeal of this case, reported in 95 Tex. Crim. Rep. 173, where this question was decided adversely to appellant.

**4.—Same—Evidence—Interest of Witness—Properly Shown.**

It is permissible for the state to prove by witnesses introduced by the state, and on their direct examination, that they had no ill-feeling toward the accused, nor had they had any trouble with him. The fact that a witness has no private nor personal interest to advance by distorting the truth, is calculated to create confidence in his credibility, and such being the case, it would seem not erroneous to allow the witness to make such statements.

**5.—Same—Evidence—No Error Shown—In Bill of Exception.**

Where a bill of exception complains of the state asking the wife of the deceased, while testifying, if she had any children, and there is nothing in the bill from which we may get information as to antecedent facts, or the surroundings or setting of the question, we must assume that the trial court acted correctly in the matter.

**6.—Same—Charge of Court—On Adequate Cause—Sufficient.**

In passing upon the sufficiency of the court's charge, it is considered in its entirety. Sentences or expressions in the charge objected to by appellant may be entirely correct when considered in connection with the

entire charge. Appellant's objection to the court's charge on adequate cause, in which he used the language, "The following are deemed adequate cause: (1) An assault and battery by deceased, causing pain." The omission of the words "or bloodshed" was harmless, because there was no evidence in the case that the assault of deceased resulted in bloodshed.

### 7.—Same—Manslaughter—Adequate Cause.

We cannot subscribe to the view of appellant that an assault and battery on a third person, in the presence of the accused, even though such third person be the grown son of the accused, may be considered by the jury as adequate cause to reduce a homicide to manslaughter. Where the court charged the jury fully, and to consider all of the facts and circumstances in evidence in passing upon adequate cause, no error in this charge is perceived.

### 8.—Same—Charge of Court—Self Defense Sufficient.

Where, in his charge on self-defense the court affirmatively submitted appellant's theory of this issue, and charged that the jury in determining whether the deceased was making or about to make an attack on appellant, or his son, which from the manner and character of same, etc., caused him to have a reasonable expectation or fear of death, or serious bodily injury to him or his son, the matter should be veiwed from the standpoint of the accused alone, we think the exception to this part of the charge is without merit.

### 9.—Same—Evidence—Properly Admitted.

Where an eye-witness to the difficulty was testifying for the state, it was not error to permit her to place parties in what appeared to her to be the same, or similar positions to those occupied by the deceased, appellant, and his son, Tom, in order to make plain her testimony regarding the affair.

### 10.—Same—Evidence—Harmless, if Error.

Where appellant complains of the state being permitted to prove that a defense witness had been engaged in the saloon business, the objection to the testimony being that it was immaterial, incompetent and prejudicial, such objections are too general, and bring before us nothing for review.

### 11.—Same—Continued.

Also appellant's objection to a question asked a defense witness by the state, relating solely to the absence of Jim Hickox, a son of appellant, to which the objections by the defense were sustained, nothing personal to the appellant or relating to the transaction immediately surrounding the homicide appeared in the questions thus objected to, we perceive no material injury in the matter.

### 12.—Same—Continued.

Also, the complaint of appellant directed to the action of the state's attorney in asking two defense witnesses if they saw appellant shoot deceased in the back, the state's contention being that appellant did so shoot deceased, we cannot see how such question was deemed objectionable.

**13.—Same—Evidence—Properly Admitted.**

Where the defense had produced a witness who testified that after the body of the deceased had been removed to a certain place he saw a party remove a pistol from the boot leg of deceased, there was no error in permitting the state to prove by several witnesses that they were in such a position and attitude relative to the body of deceased as that they could and would have seen a pistol removed from the boot leg of deceased, and that they saw none. Following Christie v. State, 69 Tex. Crim. Rep. 598, and numerous other cases cited.

**14.—Same—Evidence—Properly Excluded.**

Where appellant sought to prove by a witness that he saw deceased prior to the killing with a man who was drunk, and rowdy, such testimony was properly excluded, there being no facts stated in the bill of exceptions presenting this complaint from which the materiality of it appears, and no injury could have resulted to appellant from the rejection of the testimony, because there was positive and direct testimony from a number of witnesses that deceased was drinking on the night of the homicide.

ON REHEARING.

**15.—Same—Change of Venue—Transcript—Held, Sufficient.**

Where a transcript on appeal recites that there was a regular transfer of all orders and things done in this case from the District Court of Upton County to the District Court of Nolan County, and no objection or exceptions, either by the state or the defendant to the jurisdiction of this cause in Nolan County, this will be held a sufficient compliance with Art. 570, C. C. P. of 1925, (old Art. 635, Vernon's C. C. P.). Distinguishing Bird v. State, 91 S. W. Rep. 790.

**16.—Same—Evidence—Incidents and Surroundings of Difficulty—Generally Admissible.**

Those incidents and surroundings connected with and incident to the beginning of a difficulty, resulting in the homicide, are admissible. The acts and conduct of the deceased, which were . unknown to the accused, where it tends to affect his defensive theory, are not admissible against him. The acts and conduct of deceased and the son of the appellant, occurring just prior to the shooting, were a part of the res gestae, and were properly admitted. ˙ Distinguishing Archer v. State, 263 S. W. 305, and Wooley v. State, 64 S. W. 1054.

Appeal from the District Court of Nolan County. Tried below before the Hon. W. P. Leslie, Judge.

Appeal from a conviction of murder, penalty thirty-five years in the penitentiary.

This is a second appeal of this cause. See Hickox v. State, 95 Tex. Crim. Rep. 173.

*Beall, Beall & Beall* of Sweetwater, *Collins, Dupree & Crenshaw of ˙Hillsboro,* for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction in District Court of Nolan County of murder, punishment thirty-five years in the penitentiary.

This case was tried in a district court which, under our Constitution, has jurisdiction of felony cases. No sort of plea to the jurisdiction was presented to the trial court, but appellant here insists that his case should be reversed because the record contains no transcript of any orders showing a change of venue from Upton County, where the indictment was presented, to Nolan County, where it was tried. If there had been no such transcript on file in the office of the district clerk of Nolan County, at any time when this case was called, or if same though on file had been defective—appellant should in some way have brought such matter to the attention of the trial court at a time when the state could have supplied the omission or corrected the defects. Not being thus raised, the presumption of regularity obtains. Haley v. State, 87 Tex. Crim. Rep. 524; Biggerstaff v. State, 129 S. W. Rep. 840; Wolfforth v. State, 31 Tex. Crim. Rep. 396. Not having raised the point in limine or reserved any exception in the trial court to said action taken by the court upon the question here for the first time raised, appellant is in no position to complain. Art. 744, Vernon's C. C. P.; Terrell v. State, 174 S. W. Rep. 1089; Vance v. State, 34 Texas Crim. Rep. 395. A certified copy of the notes of the official stenographer shows that there was such transcript.

There are in the record eighteen bills of exception complaining of argument made by counsel for the state. There is no discussion of any of these in appellant's brief further than to refer to the bills by number and to state that the court erred in refusing to give any special charges relative to such argument. No comments appear in the brief, nor are any authorities cited in connection with any of these complaints of the arguments. We have carefully considered each of said bills and find ourselves unable to agree that any of them show error or that they merit extended discussion at our hands. The matters complained of are in no instance self-evidence of unfair deductions from matters which might be in the record, nor do they manifest any abuse or bring before the jury any matters dehors the record.

Bills of exception Nos. 19 and 20 complain that witness Neville was permitted to state acts and words of himself, deceased and Tom Hickox, a son of appellant—the contention

being that same were not in the presence and hearing of appellant and not binding on him. Substantially these same complaints were made upon a former appeal. See Hickox v. State, 95 Tex. Crim. Rep. 173, and there decided adversely to appellant. We do not regard Archer v. State, 263 S. W. Rep. 305, as any authority for now holding these facts inadmissible. What was done and said by the accused in the Archer case, was not at the time and place of the homicide and formed no part of its res gestae, but the facts before us are different. The matter here complained of was the beginning of a difficulty which continued in progress and was transpiring when defendant approached, and in which he took part by shooting deceased. No physical encounter between Tom Hickox and deceased had taken place before appellant came up, and that he was present while deceased and Tom Hickox were clinched and struggling is manifest. It is made to appear by the state's testimony that before said parties began their physical encounter, deceased appealed to appellant to induce Tom not to have any trouble, following which Tom Hickox struck deceased who grappled with him, and that appellant then shot deceased. We see no reason for holding differently in regard to this matter from what we formerly held. The evidence was admissible.

No error appears in allowing state witnesses who may have given testimony injurious to appellant, to state on direct examination that they had no ill-feeling toward the accused, nor had they had trouble with him. Complaint of this appears in several bills of exception. The authorities cited by appellant, viz: Jacobs v. State, 59 S. W. Rep. 1111, and Rutherford v. State, 67 S. W. Rep. 100, go no further than to state the well known rule that the mere contradiction of the testimony of a witness gives no right to the party introducing him to prove his general good reputation for truth and veracity. The fact that a witness has no private or personal interests to advance by distorting the truth is calculated to create confidence in his credibility, and such being the case it would seem not erroneous to allow the witness to make such statements.

Somewhat akin to the above is the complaint made because the state on cross-examination of Tom Hickox was permitted to ask him if he knew any reason why state witness Neville should testify falsely against his father. Neville had testified, and his testimony was directly contradictory to that of appel-

lant and his son, Tom. On its cross-examination of Tom, the state elicited from him the fact that Neville was present when the difficulty which ended in the homicide began. It being apparent that the testimony of appellant and his son, and that of Neville could not all be true, we see no reason why the state might not make such inquiry.

Bill of exceptions No. 49 merely sets out that in its rebuttal testimony the state introduced the widow of deceased and asked her, among other things, "Have you any children?" This was objected to as immaterial and prejudicial. We have no means of knowing whether this testimony was material to any issue in the case or not. There is absolutely nothing in the bill from which we may get information as to antecedent facts or the surroundings or setting of this question. We uniformly hold that unless the bill contains facts which show that the matter complained of is objectionable, or such fact be self-evident, we must assume that the trial court acted correctly in such matter.

Appellant urges that an exception to the charge of the court, which is as follows:

"Defendant objects to the court's charge on manslaughter, and especially to section 1 of paragraph 10 because the same is too abstract in form and does not enlighten the jury as to the real meaning thereof, and is misleading, and because the court instead thereof does not instruct the jury in plain language that an assault and battery of one person upon another causing pain is deemed in law an adequate cause to produce in the mind of the person so assaulted a degree of anger, rage, sudden resentment, or terror sufficient to render the mind of such person so assaulted incapable of cool reflection," should have been sustained. Section 1 of paragraph 10 of the charge thus attacked, is as follows: "The following are deemed adequate causes: (1) An assault and battery by the deceased causing pain." We are unable to agree with appellant's petition. The court had given the jury the statutory definition of manslaughter, and followed same by a statement of what would constitute adequate cause in which, among other things, occurs the language objected to. Same was a plain, unambiguous statement of a statutory definition and would have been in the exact language of the statute if it had added thereto the words "or bloodshed." It not being claimed that the assault by deceased upon appellant, testified to by appellant and his witnesses, caused any bloodshed, this left the matter

in such shape as that the statement objected to seemed entirely correct. Bearden v. State, 44 Tex. Crim. Rep. 583.

We know of no precedent holding good an exception to the charge for not submitting to the jury the proposition that an assault and battery on a third person in the presence of the accused, even though such third person be the grown son of the accused, may be considered by the jury as adequate cause to reduce a homicide to manslaughter. In this case the charge told the jury fully that any circumstance or condition which was capable of creating and did create in the mind of the accused such rage, anger, sudden resentment or terror as to render it incapable of cool reflection, whether accompanied by bodily pain or not, would be deemed adequate cause; and that if there appeared several such causes, it was for the jury to determine whether all the causes combined were sufficient to constitute such adequate cause; also that in determining the question all the facts and circumstances in evidence, including the acts and conduct of deceased, if any, toward appellant or his son—should be considered, if any, toward appellant or his son—should be considered. We think the charge in that part just referred to must have been changed after appellant's third exception thereto was presented, for same seems full and adequate on the point.

This seems true of appellant's exception to the 16th paragraph of the charge. The court therein does tell the jury that the reasonable apprehension of death or serious bodily injury is to be determined "from the defendant's standpoint at the time," which language must have been inserted after the exception was presented. We also note that in paragraph 17 of the charge, which applies the law to the facts in submitting the theory of self-defense, the court told the jury that in determining whether the deceased was making or about to make an attack on appellant or his son, which from the manner and character of same, etc., caused him to have a reasonable expectation or fear of death or serious bodily injury to him or his son, the matter should be viewed from the standpoint of the accused alone. We think the exception to this part of the charge is without merit.

A number of exceptions to the court's charge are submitted in the brief accompanied by neither citation of authorities nor discussion of the facts supporting the contention as to said supposed errors. An examination of the charge of the court

as a whole fails to convince us that any of these matters present error.

That a witness who saw the homicide was allowed, over objection, to place parties in what appeared to her to be the same or similar positions to those occupied by deceased, appellant and his son, Tom, in order to make plain her testimony regarding the affair, seems not erroneous.

In the cross-examination of a defense witness it was developed that at a former time he had been engaged in the saloon business. The objection to this was that it was immaterial, incompetent and prejudicial. Such objections are too general and bring before us nothing for review. There is also a bill complaining of a question asked a defense witness by the state relating solely to the absence of Jim Hickox, another son of appellant, to which the objections made by the defense were sustained. Nothing personal to the appellant or relating to the transaction immediately surrounding the homicide, appeared in the questions thus objected to, and we perceive no material injury in the matter.

There is a complaint directed at the action of the state's attorney in asking two defense witnesses if they saw appellant shoot deceased in the back. The state's contention herein was that appellant did so shoot deceased, and it is not clear to us how the questions could be deemed objectionable.

A defense witness testified that after the body of deceased had been removed to a certain place, he saw a party remove a pistol from the bootleg of deceased. In its rebuttal the state introduced several witnesses who helped to carry the body of deceased from the place where he was shot to the place where the defense claimed the pistol to have been taken from the bootleg. Another witness who worked over the body was introduced by the state. These witnesses testified to facts showing their opportunity for observation and asserted that no pistol was taken from said bootleg. We do not believe it erroneous for the state to be allowed to ask these witnesses if they were in such position and attitude relative to the body of deceased as that they could and would have seen if there had been any pistol in his bootleg. In our opinion, under the facts of this case, the testimony objected to was but a shorthand rendition of what the witnesses had seen and dealt with, and was a statement of their knowledge which might not otherwise have been expressed in words. Christie v. State, 69 Tex. Crim. Rep. 598; Powers v. State, 23 Tex. Crim. App.

42; Hardin v. State, 8 Tex. Crim. App. 653; Irvine v. State, 26 Tex. Crim. App. 37; Strickland v. State, 71 Tex. Crim. Rep. 582; Thompson v. State, 19 Tex. Crim. App. 593; Williams v. State, 60 Tex. Crim. Rep. 453.

In the absence of any statement that he saw deceased drinking or any conduct on the part of deceased from which the jury might conclude that deceased was under the influence of liquor, it was proper to reject the testimony of a witness proposing to state that he saw deceased prior to the killing with a man who was drunk and rowdy. There are no facts stated in the bill of exceptions presenting this complaint from which the materiality of same appears. We might say in this connection that while the absence of such facts from the bill makes it defective, no injury could have resulted to appellant from the rejection of the testimony because there was positive and direct testimony on the part of a number of witnesses for the defense to the fact that deceased was drinking on the night of the homicide.

There are some other matters complained of by bills of exception which we have not discussed. There are no bills of exception in the record which have not received our careful consideration. This is the second trial and conviction of appellant. He seems to have been ably defended, and all the matters deemed of avail upon appeal were preserved and brought to this court. The facts will be found in the former opinion sufficiently stated.

Believing appellant to have had a fair trial and that no errors are manifested in this record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant complains of our holding against his plea, presented for the first time in this court, that the record fails to show how the District Court of Nolan County acquired jurisdiction to try the case upon an indictment which had been returned in Upton County. There being no possible doubt of the jurisdiction of the District Court of Nolan County over the subject matter of this case, and none raised as to the fact or the regularity of a change of venue, and no sort of plea to the jurisdiction of the person of appellant when the case was called for trial in Nolan County, we adhere to our former conclusion that the uniform presumption of regularity would obtain.

In addition to said presumption, however, we call attention to what was not mentioned in our former opinion, viz: the fact that in this transcript, over the certificate of the clerk of the District Court to all the matters therein contained, appears a statement that there was a regular transfer of all orders and things had and done in this case from the District Court of Upton County to the District Court of Nolan County, and no objection or exceptions either by the state or the defendant to the jurisdiction of this cause in Nolan County. No contest is here made of the truth of this statement which we suppose to have been made by the clerk of the District Court in lieu of an extended copy of the transcript referred to in Art. 570, 1925 C. C. P. (old Art. 635, Vernon's C. C. P.), there being nothing in the rules laid down on page 24, Vol. 142 S. W. Rep., referring to the contents of transcripts on appeal to this court, which would require that the orders, etc., on a change of venue, be incorporated in such transcript on appeal. Such transcript is primarily for the information and satisfaction of the trial court who finds pending on his docket a felony case in which appears no exceptions or complaint of the regularity of the change of venue which brings the case upon his docket. See Cyc. Vol. 12, p. 251. Being so satisfied, and there being no contest over the matter, the trial court would proceed to try the case.

We think the cases cited by appellant in reference to the transfer of misdemeanor cases originating by indictment, not applicable and especially under facts such as appear in the record before us.

It appearing to the satisfaction of the trial court that all matters pertaining to the change of venue were regular, and there being no complaint in the trial court where upon presentation of such complaint any mere irregularity might be considered and remedied if possible, we hold appellant's complaint in this regard without merit. In the Bird case, 91 S. W. Rep. 790, the question of the validity of the transfer of a misdemeanor case was raised first in the trial court. It was made to appear that no order of transfer had been made. We find nothing in the other cases cited by appellant showing how or when the question as to the validity of the order of transfer, or the absence of the order of transfer, was raised.

Appellant renews complaint of the admission of Neville's testimony. It is referred to in our former opinion as bills of exception Nos. 19 and 20. The testimony objected to in bill No. 19 was that of Neville who said that he had a conversation with

Schrier (deceased) and right after the conversation he and Schrier went to the west side of the building (referring to the garage building where the killing took place) and got some water from a hydrant. We confess our entire inability to see how this testimony, which would seem but leading up to and showing the location of the parties at the time of the fatal encounter, could be held to impinge on appellant's theory of a killing in defense of himself or Tom Hickox. The theory of self-defense, if any in this case, was in no way affected by the question as to whether Schrier was in one part of the building or another. The testimony complained of in bill of exceptions No. 20 was that of Neville, who stated in substance that while he and deceased were standing by the hydrant mentioned, the hand of deceased being on the shoulder of witness, young Tom Hickox came up, shook hands with witness, and then turned to deceased and said, "What did you beat up my little brother for?" To which deceased replied that he did not beat him up, and Tom said he was a damn liar, he did. That appellant was not present at this time.

The court in approving the bill certifies that he admitted the testimony because it was part of the res gestae; that while deceased and Tom were quarreling, as set out, appellant came in, walked around them, and shook hands with Neville, whereupon deceased spoke to appellant and said, "Mr. Hickox, speak to Tom, I don't want to have any trouble with him." No blows passed between deceased and Tom up to this time, and appellant was present when Tom struck deceased and the physical encounter began. We must again confess our inability to see how the inadmissibility of this testimony can be determined or affected by anything we said in Archer v. State, 263 S. W. Rep. 305, or Wooley v. State, 64 S. W. Rep. 1054. In the latter case Phillips and his wife swore that on the morning of the homicide and prior thereto deceased told them he was going to Griffiths' to look for work, and was going through Wooley's field. Deceased was shot at the edge of Wooley's field. Appellant claimed that he went to the field to shoot a hawk and was there attacked by deceased who was at an unusual and unexpected place, and that he shot deceased in self-defense. Manifestly proof that deceased, unknown to the accused, had told parties that he was going to the unusual and unexpected place on a peaceful and lawful mission when and where appellant claimed he was attacked by deceased and had to defend himself, would likely be appropriated by the jury to the detriment of the defensive theory. So in

Archer's case, supra, wherein we held incompetent statements of the deceased prior to the fatal difficulty indicative of a peaceful purpose on his part in going to where the encounter took place, we said:

"An examination of these authorities will reveal that in so far as they here apply they uphold the rule that, if one charged with murder knew or was informed prior to the homicide of the motive, purpose, reason, declarations, or acts of deceased, proof of the same is admissible if it tends to solve any issue in the case; that a defendant can only be bound so far as matters reasonably appeared to him at the time he acted; that proof of deceased's undisclosed reason or motive in being where he was, or in going to the scene of the homicide, or proof as to his real destination, if unknown to defendant at the time he acted, is not admissible against him *where it tends to affect his defensive theory.*"

The point in said two cases just mentioned, and that in the testimony here being discussed, seems wholly at variance. In both the Wooley and Archer cases, supra, deceased informed other parties, prior to going to the locality where the fatal encounter took place, that he was going upon a peaceful mission and purpose; the facts in testimony as to what occurred thereafter being wholly at variance with the proposition that deceased did go there for a peaceful purpose. We held that these matters of undisclosed purpose on the part of deceased were inadmissible. In the case before us it appears entirely immaterial whether deceased was in one part of the garage or another at the time he was approached by Tom Hickox and the quarrel between the two began. Wherever they were would not affect hurtfully the defensive theory. The fact that they were quarreling when appellant walked in, and that following the appeal made to appellant by deceased to speak to appellant's son, the latter struck deceased, following which appellant shot, as he claimed, in defense of his son, was a part of the transaction and res gestae thereof.

Being unable to agree with any of the contentions made in appellant's motion, same will be overruled.

*Overruled.*