Strafford,
Oct. 5, 1943. } No. 3429.

STATE *v.* JAMES A. BARRY, *alias* JOHN BOLTON.

*Stephen M. Wheeler*, Attorney-General, and *John F. Beamis, Jr.*, County Solicitor (*Mr. Wheeler* orally), for the State.

*John S. Hurley* (by brief and orally), for the defendant.

MARBLE, C. J. The State's evidence tended to establish the following facts:

On the afternoon of October 16, 1936, the paymaster of the Maybury Shoe Company in Rochester and his assistant went to a local bank and there procured approximately $10,000 in bills and $300 in coins, with which to settle the weekly payroll of the factory operatives. As they alighted from their automobile in front of the company's office (one carrying a bag containing the bills, the other a bag

containing the coins), they were confronted by two men, who brandished revolvers and ordered them to "drop those bags." They obeyed this order. Thereupon, the gunmen, after firing several shots, grabbed the bags, jumped into a waiting sedan and were driven rapidly away.

All this activity, however, did not pass unnoticed. One Jacob Gotz, proprietor of a restaurant located in the factory building, heard the commotion and started after the fugitives in his car. He pursued them through the city and followed the skid marks of the sedan, which were "very noticeable," out into a cross-country road, known as the Salmon Falls road, where unexpectedly his progress was retarded by a Ford coupé, green in color, which was stalled crosswise of the highway with its rear wheels resting in the gutter. The driver of this coupé was a "red-headed girl," later identified as Catherine MacKinnon. The coupé, which bore a Massachusetts number plate, had been parked near the shoe factory just before the robbery occurred.

After Gotz had reduced his speed and steered his car around the coupé, he continued his pursuit of the sedan, following its tire marks out over route 16 to the old Dover Road, so called. He had driven up the Dover Road but a short distance when he observed two men entering a path or cartway leading into the woods. Suspecting that they were the men who had escaped in the sedan, he drove hurriedly to Dover and there procured the services of a police officer. Accompanied by this officer, he then returned to the point where the two men had entered the woods. The officer walked up the path for a short distance in search of the men while Gotz remained standing at the side of the road.

In the meantime a workman who had been scarifying the Salmon Falls road with a grader had pulled the green coupé out of the ditch, and as Gotz stood there near the spot where the two men had disappeared he saw the green coupé coming toward him. But as soon as the driver saw Gotz she turned the coupé about and drove back toward route 16. Gotz called to the officer, who joined him at once. Both sprang into Gotz's car and gave chase to the girl. They caught her very shortly and took her to the Dover police station.

Both the paymaster and his assistant testified that their assailants were dressed in overalls and wore caps. In the back of the green coupé the police discovered three topcoats, three hats, and two suit coats. The motor vehicle registration card, which the girl surrendered to the police, indicated that the coupé was registered in the

name of John A. Bolton, 15 Linnean Street, Cambridge, Massachusetts.

A former superintendent of an apartment house at 15 Linnean Street testified that the defendant leased an apartment there in July, 1936, under the name of Bolton and that he and his wife abandoned the apartment sometime in October of that year, although the rent had been fully paid in advance. The witness also testified that neither the defendant nor his wife ever returned to the apartment, and that the owner of the building placed their furniture, clothing, and cooking utensils in storage.

The only direct evidence which the State introduced to connect the defendant with the crime is contained in the testimony of the workman who was grading the Salmon Falls road. He testified substantially as follows: "While I was scarifying the road a big black sedan came up. I was in the center of the road, and in order to go by me the sedan had to come almost to a dead stop. And a fellow stuck his head out the window and kept staring at me as if he was mad because I had the road stopped or something, and I kept staring at him until they got by. There were three men in the car, one man in the front seat and two men in the back." The witness then declared unequivocally that the man who stared at him was the defendant.

Commenting on the unreliability of this testimony, defendant's counsel calls attention to the fact that the witness was testifying more than six years after the robbery had taken place and that he had had only a brief glimpse of the man in the car.

The defendant does not deny that a robbery, as defined by section 18 of chapter 392 of the Public Laws, was committed (see *State* v. *Iacavone*, 85 N. H. 207, 208), but contends that the State's evidence is insufficient to constitute proof beyond a reasonable doubt that he was a participant therein. It is unnecessary, however, to consider the situation merely as it existed at the close of the State's evidence, for the defendant did not elect to rely solely on his exception to the denial of the motion then made but proceeded to introduce evidence in his own behalf. By so doing he took the chance of supplying deficiencies in the State's case. *State* v. *Hinton*, 84 N. H. 75, 77.

The defendant's wife, called by the defendant, testified that she and her husband were living in Cambridge in 1936 under the name of Bolton and that her husband had assumed that name because somebody was "bothering" him at their former address; that her husband worked nights at a café in Boston, that he owned a Ford coupé, and

that she herself had loaned that coupé to a friend (Catherine Mac-Kinnon) on the night of October 15.

She declared that her husband worked at the café that night and slept all the next forenoon, that they attended a motion picture theatre that afternoon, and that the next morning they went into a restaurant for coffee, and her husband had a newspaper with him.

"He read the paper," she said, "and he looked peculiar and in fact he looked shocked. I said, 'What's wrong?' and I looked at the paper and there was a big headline about this New Hampshire business, and I don't of course remember what exactly it was in the paper but what was in it made my husband think that it was his car that was involved in the business up here. . . .

"He looked peculiar; he said, 'That's terrible, and here am I living under an assumed name and our car is in trouble and involved in something I had nothing to do with, knew nothing about it.' And he said, 'I have to go out of town.'"

She then testified that they left town immediately and never returned to their Cambridge apartment but lived for the next few years under various assumed names and in various cities, including New York, Hartford, Springfield, and Worcester. There is no evidence that during that time the defendant was engaged in any legitimate gainful occupation. The defendant himself did not testify.

"It is to-day universally conceded that the fact of an accused's flight, . . . assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." Wig. Ev. (3d *ed.*), *s.* 276, *p.* 111. See also *State* v. *Rand*, 33 N. H. 216, 225.

In the trial of the present case, as in the trial of *State* v. *Kilcoyne*, 82 N. H. 432, the principal issue was that of identity, and it was not essential that each evidentiary fact bearing on that issue should be established beyond a reasonable doubt. The evidence as a whole is sufficient to justify the verdict rendered.

The paymaster testified that one of the men who participated in the robbery resembled the defendant. His assistant declared that he didn't see anyone in the courtroom that he could "definitely say was the person" who held him up, and he "wouldn't say there was anyone" there who resembled him. Subject to the defendant's exception, the Presiding Justice then permitted the State to show by the witness that he was acquainted with Catherine MacKinnon before the robbery occurred and that he had married her sister since that occurrence. The evidence was material as affecting the credi-

bility of the witness. *Watson* v. *Twombly*, 60 N. H. 491, 492; *Bernier* v. *Nute*, 77 N. H. 568. Its use by the State was permissible in the discretion of the trial Court. *Dow* v. *Dow*, 77 N. H. 150, 151; *State* v. *Roach*, 82 N. H. 189, 190.

Except as to matters already considered, the motion to set the verdict aside presents merely questions of fact properly determinable by the Presiding Justice. *Damboise* v. *Goodman*, 86 N. H. 360, 361; *Larose* v. *Porter*, 87 N. H. 241, 246.

*Exceptions overruled.*

All concurred.