Argued and submitted December 5, 1973, affirmed June 20, 1974

## STATE OF OREGON, *Respondent, v.*
## HAROLD R. ESTLICK, *Petitioner.*

523 P2d 1029

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed briefs for petitioner.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, John W. Osburn, then Solicitor General, and John H. Clough, Assistant Attorney General, Salem.

DENECKE, J.

The defendant, an insurance claims adjuster, was convicted of obtaining money by false pretenses. He allegedly obtained money by paying claims, which he knew to be false, to Evans Smith and accepting from Smith a share of the proceeds. The Court of Appeals affirmed the conviction. 14 Or App 288, 511 P2d 1250 (1973). We granted review.

At the trial the state called Smith as its first witness. He testified he was serving a term in the penitentiary and had pleaded guilty to a charge involving the same transaction involved in the present charge against defendant. The defendant objected to this testimony; however, he did not assign as error the receipt of this testimony into evidence. For this reason we will not consider any issue concerning the receipt of this part of Smith's testimony.

Smith was then permitted to testify over objection to the following: (1) that he was on "work release" with his parole date approaching and a state correctional officer loaned Smith $25; (2) that an investigator for an insurance company threatened Smith that if he did not testify, additional charges would be brought against him, and also against his wife, but that the insurance investigator would "go to bat" for him if he testified; and (3) that the state's attorney

had said, nevertheless, that he would not be involved in any threats or promises and had offered no such inducements; and (4) that the state's attorney had told Smith that if he testified the state's attorney would notify the parole board of his testimony.

The testimony received is a combination of a showing of grounds for bias and interest and an attempt to negate an inference of bias and interest. Showing bias and interest of a witness is a method of impeachment. The defendant objected to the testimony upon the ground that the state was impeaching its own witness contrary to ORS 45.590. We will assume, without deciding, that this was impeaching testimony.

ORS 45.590 provides, in part: "The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in ORS 45.510."

The rule at common law was that a party calling a witness could not impeach that witness. This broad rule is universally attacked as being without any virtue. 3A Wigmore, Evidence (Chadbourn Rev), 658-663, §§ 896-899; Morgan, Basic Problems of Evidence, 69-71 (1962); McCormick, Evidence (2d ed), 75, § 38.

ORS 45.590 modifies the common law and enacts a very limited ban on impeaching a witness produced by the party. See *State v. Cummings,* 205 Or 500, 521-522, 288 P2d 1036, 289 P2d 1083 (1955). ORS 45.590 only prohibits impeaching by evidence of bad character.

On occasion this court has made statements that what is now ORS 45.590 restates the common law: *State v. Hunsaker,* 16 Or 497, 499, 19 P 605 (1888);

*State v. Ede,* 167 Or 640, 644, 117 P2d 235 (1941); or that ORS 45.590 forbids any impeachment of a witness by a party who called the witness. *State v. Briggs,* 245 Or 503, 508, 420 P2d 71 (1967). All such statements are incorrect.

■ ORS 45.590 does not prohibit a party from impeaching a witness it has produced by a showing of bias or interest. We know of no reason why we should adopt such a prohibition by judicial decision. Assuming that the testimony is regarded as impeachment by a showing of bias and interest, we find the trial court's ruling was not in error.

The defendant also objected to this testimony upon the ground that the state was attempting to "buttress" Smith's credibility by this testimony. We are not quite certain what the defendant intended by using the word "buttress," but from the context and the arguments we understand the defendant's contention to be twofold: (1) that the state was trying to take the "sting" out of evidence of the witness's bias and interest by bringing it out itself rather than waiting for the defendant to bring it out on cross-examination; and (2) that the state was rehabilitating its witness by testimony of lack of interest or bias before the witness was impeached.

In the first category was the testimony that a correctional officer had loaned the witness $25; that the insurance agent told Smith he would help him if he testified but would bring charges against him if he did not testify; and that the state's attorney would notify the parole board if the witness testified. Such testimony is in no way rehabilitative.

We have never decided the issue raised as the

first basis for defendant's objection; that is, the propriety of introducing on direct examination testimony of bias and interest on the part of one's own witness. Most of the decisions from other jurisdictions on this practice concern the government introducing evidence of the criminal convictions of its own witness.[1] We are persuaded by the reasoning of other courts which, in general, permit the state to offer, on direct examination, testimony relevant to the credibility of its witness.

This reasoning is stated in *Vause v. United States,* 53 F2d 346, 351 (2d Cir 1931), cert den 284 US 661, 52 S Ct 37, 76 L Ed 560:

"Closely akin to this class of exceptions to evidence which put Montgomery, Vause, and Schuchman into the category of co-workers was the evidence that Montgomery was known to be a man who could and would indulge in trickery and fraudulent financial schemes, and was an ex-convict because of his previous practices in that regard. When Montgomery was put upon the stand to testify for the government, the district attorney introduced him to the jury by questions and answers which brought out his real character. His credibility as a witness was an important matter for the jury to decide in order to get at the truth, and there is certainly no point in condemning the district attorney for frankly disclosing at the outset what would enable the jury to do its duty in that regard. The complaint now made rather savors of the thought

[1] In Oregon the use of criminal convictions in this setting raises a special question because of ORS 45.600, providing for impeachment of a witness for the adverse party by proof of conviction of a crime, and ORS 45.590, providing that one may not impeach one's own witness by evidence of bad character. The question of impeachment by prior criminal convictions was not raised on appeal in this case and so we need not and do not pass on it here. We intend to express no opinion on the correctness of State v. Miller, 1 Or App 460, 460 P2d 874 (1970).

that he stole a march on these defendants in not letting that phase of the matter wait until they could, if they saw fit, bring out the facts on cross-examination and make the most of their apparent desire to put the witness in his proper place and themselves show that the case against them rested in part on the word of a man of abandoned character. * * *."

Chief Judge Lumbard in *United States v. Freeman,* 302 F2d 347, 350 (2d Cir 1962), cert den 375 US 958, 84 S Ct 448, 11 L Ed2d 316, stated:

"Of course it was proper for the government to bring out on direct examination the criminal record of its witness. United States v. Murray, 297 F.2d 812 (2 Cir. 1962). Not to have done so would surely have subjected the prosecution to criticism. The matter of informing court and jury about information of such clear relevance as the criminal record of a witness called by the prosecution is not something which is to be reserved for the pleasure and strategy of the defense. Whatever the rule may be with respect to the permissible limits for cross-examination of a witness or a defendant, * * * it is usually proper and desirable that the party calling a witness with a criminal record should elicit such information on direct examination."

The Supreme Court of Pennsylvania stated the reasoning:

"Defendant also complains of the District Attorney's bringing out the criminal past of his witnesses and of his cross-examining defendant about his own.

"We see no reason to nullify a prosecutor's manoeuvre in anticipating what he may be sure defense counsel will bring out. This is not impeaching counsel's own witness but rather the legitimate thrust and riposte of trial tactics." *Commonwealth v. Garrison,* 398 Pa 47, 52, 157 A2d 75 (1959).

■ Parties to a lawsuit must call witnesses who have knowledge of the facts, regardless of their bias or interest. If the party calling the witness is prohibited from eliciting testimony showing such bias or interest, the calling party is prejudiced. When the opposing party on cross-examination shows the bias or interest the jury might well believe the party calling the witness was concealing evidence adverse to the witness's credibility. Such a practice would be unfair. Accordingly, we hold that the trial court did not err in permitting the state to introduce on direct examination testimony of its witness's bias or interest.[2]

■ Testimony that the district attorney never made any threats or promises to the witness is rehabilitative, tending to show no interest. Ordinarily, receipt of such evidence before the introduction of any impeaching testimony showing interest would be error. For example, *Sheppard v. Yocum and DeLashmutt,* 10 Or 402, 413-419 (1881-1882). In the present case, however, the receipt of such evidence is not error because it came in as a minor incident to the admission of testimony showing bias and interest which, as we here hold, was admissible.

Affirmed.

TONGUE, J., specially concurring.

I agree with the result of the majority opinion, but would reach that result for somewhat different reasons.

Defendant, a claim adjuster for an insurance company, was charged with the crime of obtaining money

---

[2] The same rule, of course, would apply if the defendant was the party introducing testimony on direct examination of the bias and interest of a defense witness.

by false pretenses. The conviction of the defendant, after a jury trial, was affirmed by the Court of Appeals, 14 Or App 288, 511 P2d 1250 (1973). Defendant has petitioned for a review of that decision.

The indictment charged that defendant, together with Evans Smith (who operated a construction company), and two of Smith's relatives (who owned a home), entered into a scheme to defraud the insurance company by a false claim that the house suffered $10,000 in damages. It was charged that Smith submitted fictional repair bids, upon the basis of which defendant issued a draft for the full amount of the claim. Smith had previously pleaded guilty to the same charge.

Because many of the documents important to the proof of this scheme were issued by Smith and other documents were signed by defendant in Smith's presence, Smith was the state's key witness at the trial of defendant. At the beginning of the direct examination of Smith the state's attorney was permitted, over objection, to show: (1) That Smith had pleaded guilty and had been sentenced; that he was on a "work release," with his parole date approaching, and had been loaned $25 by a correctional officer; (2) That he had been threatened by an insurance agent that if he did not testify additional charges would be brought against him and also against his wife, but that the agent would "go to bat" for him (if he testified); (3) That the state's attorney had told him, however, that they would not be involved in any threats or promises and that they had made none to him and made no promises to him, but told him that the fact that he had testified would be reported to the parole board.

Defendant contends that "it is reversible error for the prosecution in their direct examination of their principal witness, an accomplice, to lay a basis for impeachment and then a basis for rehabilitation."

In affirming defendant's conviction the Court of Appeals recognized the general rules to that effect, but held that "we are not dealing in this case with an unimpeached witness"; that as an accomplice Smith "was impeached as a matter of law before he took the stand" by reason of ORS 17.250 (4)[1] and 136.550[2] (now ORS 136.440) with the result that "the state should have the opportunity to dispel that suspicion [of the testimony of an accomplice] by laying the circumstances before the finder of fact."

If the effect of this decision is to hold that in a criminal case in which the state calls an accomplice as a witness the state is free, at the beginning of its direct examination, to generally impeach and then attempt to rehabilitate such a witness, we would seriously question such a rule. Indeed, it would be difficult to distinguish this case from a criminal case in which a defendant with a record of past convictions desired not only to testify, but to "explain" such convictions at the beginning of his direct testimony. It would also be difficult to distinguish a civil case in which the "key witness" for one or the other party

---

[1] ORS 17.250 (4) provides:

"That the testimony of an accomplice ought to be viewed with distrust, and the oral admissions of a party with caution;"

[2] ORS 136.440 (1) provides:

"A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission."

was a person who is similarly "impeached as a matter of law."

Although the rule prohibiting the impeachment by a party of his own witness has been widely criticized,[9] it continues in Oregon as a statutory requirement, although in modified form. Thus, ORS 45.590 expressly prohibits a party from impeaching his own witness by evidence of "bad character," but permits impeachment by proof of "prior inconsistent statements."[10]

It is of significance to note, however, that although ORS 45.590 expressly prohibits a party producing a witness from impeaching the witness "by proof of bad character" and expressly permits impeachment by proof of prior inconsistent statements, the statute is completely silent upon the question whether a party may impeach his own witness by showing the bias or interest of the witness — a third and equally well established method of impeachment. Lack of bias or interest is also a proper method of rehabilitation of a witness claimed to have bias or

---

[9] 3A Wigmore on Evidence 658-663, §§ 896-899 (Chadbourn rev 1972); McCormick on Evidence (2d ed 1972) 75, § 38. See also Rule 20, Uniform Rules of Evidence; 9A Uniform Laws Annotated 607 (1965); Rule 607, Federal Rules of Evidence; and Rule 106, Model Code of Evidence (American Law Institute 1942).

[10] ORS 45.590 provides:

"The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in ORS 45.610. However, when a party calls as a witness either an adverse party or the assignor, agent, officer or employe of an adverse party, he shall not be deemed to have vouched for the credit of that witness and he may impeach the credit of that witness in the same manner as in the case of a witness produced by an adverse party."

interest. 4 Wigmore on Evidence 253, § 1119 (Chadbourn rev 1972).

In many cases, both criminal and civil, and particularly in criminal cases, the parties are not able to find witnesses without bias or interest, but must take as witnesses those who have knowledge of the facts of the case, regardless of bias or interest. Cf. *State v. Mims*, 36 Or 315, 322, 61 P 888 (1900). This is particularly true in criminal cases involving accomplices.

In *State v. Bailey*, 208 Or 321, 337, 300 P2d 975, 301 P2d 545 (1956), we said that:

> "* * * When the testimony of an accomplice is placed before a jury under a supposition that it may reflect the truth, the administration of justice demands that cross-examination should explore motive, bias and interest.
>
> "An accomplice has a powerful motive for currying favor with the prosecuting attorney. After he has revealed his criminal course of conduct to the police and the prosecuting attorney, his liberty is at their sufferance. Fears, whether warranted or not, that they will imprison him, publish his confession or cause his indictment may prompt him to make statements upon his own volition which he hopes will protect him. Sleepless nights and a harrowed conscience tincture in his mind the facts with the false. Few have as great an incentive as he to lay the ultimate blame for the wrong which he committed upon another."

For this and other reasons, the admission of evidence to show bias or interest is one of the principal areas in which the courts are beginning to relax the rule against impeachment by a party of his own witness, particularly in criminal cases, when not foreclosed by statutory provisions to the contrary.[9]

[9] Note: Impeaching One's Own Witness, 49 Va L Rev 996, 1010 (1963). See also Note, 6 Vill L Rev 583 (1961).

As stated in 3A Wigmore on Evidence 667, § 901 (Chadbourn rev 1970):

> "There is no reason, upon correct policy, why this sort of evidence should be excluded: for neither interest nor bias is a disgrace, the fear of which could be used to coerce a witness; * * *. Courts have, however, usually treated all these matters as included within the prohibition against impeachment, and excluded such evidence."

In criminal cases involving testimony by an accomplice, Wigmore would permit the state to show that no promise had been made to the witness on a somewhat different theory. Thus, it is stated in 3A Wigmore, *supra,* 816, n. 3:

> "On the principle of Explanation * * * the fact must be shown by the prosecution, even before express impeachment (because his relation to the cause is an implied impeachment), that no such promise has been made. * * *"

Some courts have permitted evidence of bias or interest on direct examination of witnesses in criminal cases, but on differing theories. In *Barger v. State,* 2 Md App 565, 235 A2d 751 (1967), the court held, as an exception to the general rule that a party cannot impeach his own witness, that a party may nevertheless show the bias or hostility of his own witness, citing some other cases to the same effect. In *People v. Kelley,* 49 Mich App 720, 212 NW2d 750, 753 (1973), the court allowed the prosecuting attorney to ask three witnesses if they had been tried for the same murder, holding that this was not contrary to the rule that the prosecution may not impeach the testimony of accomplices. In *Commonwealth v. Garrison,* 398 Pa 47, 157 A2d 75 (1959), the prosecuting attorney was permitted

to "bring out the criminal past of his witnesses," the court holding (at 77) that:

> "We see no reason to nullify a prosecutor's manoeuvre in anticipating what he may be sure defense counsel will bring out. This is not impeaching counsel's own witness but rather the legitimate thrust and riposte of trial tactics."

To the same effect, it was held in *State v. Fox,* 12 NJ Super 132, 79 A2d 76, 80 (1951), that:

> "* * * when the State must rely on the evidence of a criminal, * * * the prosecutor, at the beginning of the examination, [may] bring out the fact that the witness has been convicted of crime, since the fact may aid the jury in weighing his testimony."

See also *State v. Slack,* 69 Vt 486, 38 A 311, 313 (1897); *State v. Barry,* 93 NH 10, 34 A2d 661, 663 (1943); *People v. Fleish,* 321 Mich 443, 32 NW2d 700, 709 (1948); *Pittsburgh, C., C & St. L. Ry. Co. v. Carlson,* 24 Ind App 559, 56 NE 251, 253 (1900); *Taylor v. State,* 99 SW2d 609, 611 (Tex Crim App 1936); *Hickox v. State,* 285 SW 621, 623 (Tex Crim App 1926); *Meeks v. United States,* 179 F2d 319, 320-21 (9th Cir 1950).

Some other courts would solve the problem by having the court, on motion by the state, call such a witness as the court's witness, and then permit each party to examine and impeach the witness. See *Young v. United States,* 107 F2d 490, 493 (5th Cir 1939). See also Newark and Samuels, Let the Judge Call the Witness, 1969 Crim L Rev 399 (Brit).

In Oregon this court in *State v. Cole,* 252 Or 146, 448 P2d 523 (1968), affirmed a conviction after a trial in which the state called two co-defendants as witnesses

and asked if they had already pleaded guilty and had been sentenced.' The court (at 154) quoted with approval from *United States v. Aronson,* 319 F2d 48, 51 (2d Cir 1963), as follows:

> " 'In practically every criminal prosecution, the government's principal witness or witnesses are drawn from the ranks of co-defendants, co-conspirators or participants in the allegedly unlawful enterprise. Often they have pleaded guilty before trial * * * The prosecution called Kimball and, adhering to time-honored and approved practice, asked him if he had ever been convicted of a crime. "Not to have done so would surely have subjected the prosecution to criticism." Counsel on direct examination usually adopt the policy of bringing out such adverse facts as they know will be developed on cross-examination. Failure to disclose would then be characterized as an intent to conceal.' "

The court went on to hold (at 155):

> "* * * The testimony as to their pleas of guilty gave the circumstances under which they were testifying, and their status with regard to the charge, and went to their credibility as witnesses for the state. * * * We * * * hold that the prejudice to the defendant, if any, was rendered harmless when the co-conspirators' guilt was established by their testimony which also implicated the defendant. This is consistent with the cases cited from other jurisdictions which all permit the evidence of a plea of guilty by a co-defendant if it is clearly not for the purpose of proving the guilt of the defendant and is for another proper purpose."

For these reasons, and because ORS 45.590 is silent upon the question whether a party may impeach his own witness by showing bias or interest, I would hold that a party who calls a witness may show the bias or interest of the witness and may do so during

the direct examination of such a witness.[6] In doing so, counsel should not go into details beyond those reasonably necessary or appropriate to show the reasons for bias or interest of the witness, leaving such details to be developed on cross-examination and re-direct examination in the event that the other parties should wish to do so. Cf. *State v. Lee,* 46 Or 40, 43, 79 P 577 (1905). This is a matter which I would leave to the discretion of the trial judge. Cf. *Simmons v. Holm et al,* 229 Or 373, 406, 367 P2d 368 (1961).

I would adhere to the present rule, however, that no "supporting" evidence of lack of bias or interest is admissible unless and until evidence of bias or interest has been offered.[7] To hold otherwise would be to encourage needless delay and the injection of collateral issues. Cf. *State v. Hing,* 77 Or 462, 467-68, 151 P 706 (1915). I would also adhere to the present rule that evidence to support or rehabilitate a witness who has been shown to have some bias or interest must be confined to evidence showing a lack of bias or interest, i.e., the "supporting" evidence must be such as to meet the particular kind of impeaching evidence.[8]

Thus, for example, when the state calls a witness who was an accomplice or who is in jail on another

---

[6] In my view, this is not a matter of declining to "adopt such a prohibition by judicial decision," as stated by the majority, but should be recognized as a change in the decisional law on this subject. Thus, to the extent that State v. Hunsaker, 16 Or 497, 19 P 605 (1888); Arthur v. Parish, 150 Or 582, 47 P2d 682 (1935); State v. Ede, 167 Or 640, 117 P2d 235 (1941); Tauscher v. Doernbecher Mfg. Co., 153 Or 152, 56 P2d 318 (1936), or State v. Briggs, 245 Or 503, 420 P2d 71 (1967), and cases cited therein, hold to the contrary, they should be overruled.

[7] McCormick on Evidence (2d ed 1972) 102, § 49, and State v. Hing, 77 Or 462, 467, 151 P 706 (1915).

[8] McCormick on Evidence, *supra* note 7 at 103, and Sheppard v. Yocum and DeLashmutt, 10 Or 402, 413-14 (1882).

charge, it may show such facts upon the direct examination of the witness and may then show that no promises of leniency have been made. But the fact that no promise had been made cannot be shown unless and until it has been shown that the witness was an accomplice or in jail on another charge. And evidence of good character of the witness cannot be shown in such a case regardless of whether the evidence of bias or interest is shown.

In this case I believe that the state's attorney went into more detail than was either necessary or appropriate to show reasons for bias or interest by Smith, the accomplice. As previously stated, however, this is a matter which I would leave to the discretion of the trial judge. I believe that the latitude permitted by the trial court was not so great as to constitute an abuse of that discretion.

I would therefore affirm the conviction of the defendant, but for these reasons and upon these grounds.

McALLISTER, J., joins in this specially concurring opinion.