Coös, }
May 7, 1929. }

## State *v.* Henry L. Hinton.

*Frank P. Blais*, solicitor (by brief and orally), for the state.

*Ovide J. Coulombe* and *Ira W. Thayer* (*Mr. Thayer* orally), for the defendant.

MARBLE, J. 1. "If any person to whom any money, goods or property which may be the subject of larceny shall have been delivered or entrusted for keeping, carriage or use, . . . shall fraudulently dispose of or convert to his own use the same or any part thereof, . . . with intent so fraudulently to dispose of or convert it to his own use, he shall be deemed guilty of larceny thereof, and shall be punished as for the larceny of goods of the same value." P. L., *c.* 389, *s.* 8.

The indictment charges the defendant with having converted to his own use a certain bank check of the value of two thousand dollars, which one Mary Stillings had delivered to him for the purchase of twenty shares of the capital stock of the Orleans Granite Company. At the trial, it was claimed in support of a motion made at the conclusion of the charge that a check is not the subject of larceny.

"A check is a bill of exchange drawn on a bank payable on demand." P. L., *c.* 312, *s.* 185. See also *Barnet* v. *Smith*, 30 N. H. 256, 264. The original act making punishable the theft of certain written instruments applied in general terms to "any paper that shall contain on it evidence of a debt, covenant, contract or promise, or that shall contain on it evidence of the payment or discharge of any debt, covenant, contract or promise." Act of Feb. 16, 1791 (Laws, *ed.* 1805, *p.* 274). This act was followed by the acts of June 19, 1812 (Laws,

*ed.* 1815, *p.* 323), and Jan. 2, 1829 (Laws, *ed.* 1830, *p.* 142). In order apparently to avoid any possible question as to whether commercial paper had been included in the general classification of the original act, the words "any paper" were superseded in the later enactments by the phrase "any bond, promissory note, bill of exchange, order, or other writing or obligation." Manifestly, the subsequent readoption of a general description by substituting the words "any writing" (R. S., *c.* 215, *s.* 13) for the phrase in question did not evince a legislative purpose to reduce the number of writings embraced by the former statutes but rather a desire to render the new statute comprehensive in scope and simple in form. The statute now in force (P. L., *c.* 389, *s.* 3) does not differ materially from R. S., *c.* 215, *s.* 13. It cannot therefore be doubted that "all written instruments promising or directing the payment of money" (36 C. J. 743) are included within its terms.

"In the eye of the common law a check is but a token, representing property located elsewhere, but valueless in itself, and therefore not a subject of larceny. The statute changes this, making the instrument a subject of larceny; in other words, treating it as a thing of value in itself. And if the instrument is to be valued as a check and not as a piece of paper, what is its value? Obviously the amount it represents, if the check is good." *State* v. *McClellan,* 82 Vt. 361, 364, 365. See also *State* v. *James,* 58 N. H. 67. Possession of the check in the present case gave the defendant "control of an amount of current money equal to the face of it, with the power of transferring that control by indorsement." *State* v. *McClellan, supra.* Extended discussion is not essential, however, since the question is not argued in the defendant's brief.

At the close of the state's evidence the respondent moved to be discharged on the ground that there was no evidence from which the jury could find that he had committed any offense under the statute. It is unnecessary to consider the situation at the time the motion was made, for the exception to the denial of the motion would be waived if the evidence subsequently introduced supplied any deficiency in the state's case. *Lane* v. *Manchester Mills,* 75 N. H. 102, 106; *Burnham* v. *Railroad,* 69 N. H. 280, 282.

The evidence tended to prove the following facts:

In May, 1926, the defendant was engaged by the Orleans Granite Company of Newport, Vt., to sell an issue of its stock on commission. He was authorized to sell only for cash and only in the state of Vermont. He understood that no certificate of stock would be issued

until the company had received payment. In July, he was prosecuted for a violation of the law of Vermont relating to the sale of securities. Shortly afterward, he severed his relations with the Orleans Granite Company so far as the sale of stock in Vermont was concerned, but later made arrangements for selling the stock in New York.

On October 15, one Mary Stillings had an interview with the defendant at the house of a neighbor in West Stewartstown. She requested him to purchase for her certain securities which he stated he could not obtain, and on his representation that the stock of the Orleans Granite company was just as good as the securities she desired, she gave him a check for two thousand dollars payable to his order, and directed him to buy that stock and send the certificate to Canaan, Vt., in care of her daughter. She gave these directions because she knew that the defendant was not registered as a salesman or agent in this state. P. L., c. 284, s. 17. On the following day, the defendant deposited the check at the Coös County National Bank of Groveton and immediately withdrew fifteen hundred dollars in cash, which he subsequently used for his own purposes. In explanation of his inability to repay the money or obtain the stock he testified that, on November 8, he was held up by highwaymen near Hoosick Falls, N. Y., and robbed of money and bonds amounting to about $17,000.

It is the defendant's contention that, while he was not an agent *de jure* of the Orleans Granite company, he was its agent *de facto*, and that if he committed any offense it was embezzlement of funds belonging to that company. This argument fails to take into account the knowledge which Mrs. Stillings had of the limitations of his authority. Even if the question of apparent authority were important, it could not be decisive here, since according to the defendant's own evidence Mrs. Stillings was aware that he had no right to sell stock in this state. He testified: "I told her I would not sell her in New Hampshire."

On this evidence the jury were fully justified in finding that Mrs. Stillings acted on the information she had received and intrusted the check to the defendant as her agent to purchase for her in Vermont the stock in question. As a further indication that she was not dealing with the defendant as an agent of the Orleans Granite company it is significant that she first asked him to buy for her stock of the Twin State Gas & Electric company and that he promised her he would try to secure the stock for her later. She said: "He didn't tell me he was their [the Orleans Granite company's] agent. . . . I expected to get it [the stock] when Mr. Hinton took my money and

was supposed to buy it for me. . . . I gave him the two thousand dollars to buy the Orleans Granite Company stock. . . . And he didn't buy it."

The defendant's motion was properly denied.

2. Mrs. Stillings testified that she first met the defendant a few weeks prior to the transaction here involved and that he then wanted her "to take out some gold notes," referred to in the defendant's testimony as Central Vermont Talc Mine gold notes. On redirect examination she was asked, subject to exception, if on that occasion the defendant said anything to her about having a "license or right to sell in New Hampshire or Vermont." The extent of Mrs. Stillings' knowledge of the defendant's status as a salesman in New Hampshire had been the subject of extended cross-examination. The state had a right to continue that line of inquiry. Furthermore, evidence of the defendant's method of conducting prior negotiations was admissible in the court's discretion on the question of fraudulent intent. *Land Finance Corporation* v. *Company*, 83 N. H. 518.

3. It appeared in evidence that the defendant had an account in the City National Bank of Berlin in the name of Henry L. Hinton, trustee. As tending to prove that he did not treat the proceeds of Mrs. Stillings' check as a trust, it was competent to show that he made no deposit in the trust account after October 15.

4. The defendant testified that he had transacted some business with a bank in St. Johnsbury, Vt. In corroboration of that statement he offered a receipt for $500, dated January 11, 1926. Even if this receipt had been properly verified and was otherwise admissible, it might well have been excluded on the ground of remoteness.

5. Copies of deposit slips dated October 12, 14, 15, and 17 were offered by the defendant to show that he had deposited sufficient funds in the Coös County National Bank "to cover or to partially cover" the amount of Mrs. Stillings' check. There was no claim that this evidence would contradict the testimony of the cashier that the defendant had a balance of only $25.98 on October 15, when the check was deposited, or that he withdrew $1,500 simultaneously with the deposit. It is not apparent how these slips could have had the slightest bearing on any of the issues raised. Furthermore, the proffered exhibits were not the original deposit slips but merely alleged copies made by the defendant himself.

6. A check, dated June 14, 1926, drawn by the defendant on the Coös County National Bank and payable to the order of the Orleans Granite company, was offered by the defendant as tending to prove

that he was the company's duly authorized salesman. He *testified* without objection that this check was given in payment of stock he had sold for the company. The state did not deny that he was selling stock for the Orleans Granite company at that time. The controverted question was not the existence but the limitation of his authority. Certainly the mere exhibition of the check could throw no light on that subject. The ruling of the court restricting the use of the exhibit was unobjectionable.

For like reasons, two letters written by third persons to the Orleans Granite company in February and May respectively were excluded as exhibits. One of these letters contained an inquiry regarding samples of granite; the other a request for the name of the company's salesman. The defendant testified that both letters were handed to him by the company. They were written at a time when the defendant had unquestioned authority to act as salesman for the granite company in the state of Vermont. The evidence was conflicting as to whether that authority was terminated after his arrest in July, and there is nothing in the letters which could have helped the jury to decide that question or to determine the extent of the defendant's authority (if he had any at all) on October 15.

The defendant frequently exchanged the stock of the Orleans Granite company for other securities. But the granite company refused to deliver its stock until he had sold the securities and forwarded the cash. His offer to show that on one occasion the company was willing to depart from this custom was properly excluded. No question of an exchange of securities was involved in the case, and the evidence had no tendency to prove an enlargement of the defendant's authority.

7. Subject to a general exception, the state was allowed to show on cross-examination of the defendant that he had been arrested and had paid a fine for selling worthless securities in Vermont. This evidence was admissible on the question of the defendant's integrity. *State* v. *Travis*, 82 N. H. 220. Certain paragraphs of a letter written by the vice-president of the granite company and referring to a note given in payment of the fine were excluded when the letter was offered as a part of the state's case. After the respondent had waived his privilege by testifying, it was proper for the solicitor to interrogate him regarding these paragraphs.

8. The respondent claimed that he could not purchase the stock for Mrs. Stillings or return the proceeds of the check to her because he had been robbed of all his money and effects. The state had a

right to test the truth of this assertion by every legitimate means. The defendant testified that he had applied for theft insurance but had been unable to obtain it. Inferences both favorable and unfavorable to him might well be drawn from the circumstances surrounding this alleged transaction. An official who investigated the reported robbery stated that a so-called insurance specialist, accompanied by the defendant, had called on him and asked him to sign a written statement relating to his investigation. That the solicitor, in his endeavor to ascertain the exact facts of the matter, was entitled to demand the name of the insurance specialist as well as the name of the insurance company to which the defendant had made his alleged application is too clear for discussion.

In commenting on the situation in his argument to the jury the solicitor said: "Now, what was he there with that insurance man for? They were after some statement regarding this holdup and they didn't get it. He does admit that he made application. Did he make an application or did he get a policy out? He hasn't come in here and shown anything, or brought any insurance man in here to tell you that he did legitimately have a policy there. No, of course not. He could have done it; he had facts and figures at his command and could have produced those things in here and showed you he had insurance on this and had this holdup and hadn't been able to collect from the company."

At this point the defendant objected and claimed an exception. The presiding justice ruled that "the last statement better be withdrawn," and the solicitor complied with his request. As thus corrected, the argument was permitted to stand. No further objection was made or exception taken. It has been repeatedly held that "exceptions should be taken to the allowance of argument rather than to the argument itself." *Willette* v. *Whitney*, 82 N. H. 209, 210, and cases cited. The defendant's sole claim is that the solicitor was testifying. The language taken as a whole does not bear that construction.

The solicitor's characterization of the defendant as a "big hog" was not unwarranted by the evidence. *State* v. *Dinagan*, 79 N. H. 7, 10; *State* v. *Small*, 78 N. H. 525, 530.

9. One of the defendant's requests for instructions was equivalent to a motion for a directed verdict.

Another request was as follows: "You are instructed that, if, at the time that Hinton took the check from Mrs. Stillings, he was the agent of the Orleans Company, and that Mrs. Stillings parted with the

check knowing that he was the agent of said Company, and that she intended to buy stock of said agent, that after the money was turned over to Mr. Hinton by Mrs. Stillings, it was the money of the Orleans Granite Company, and not of Mrs. Stillings, and that consequently, you will find the respondent not guilty of larceny from Mrs. Stillings. If there was a conversion by Hinton after the bargain with Mrs. Stillings, it was embezzlement from the Orleans Company and not larceny from Mrs. Stillings."

This request is too general in its terms. Although Mrs. Stillings knew that the defendant was the granite company's salesman, she also knew that his right to sell stock in New Hampshire was questionable. If, therefore, she intended to buy stock "of said agent" in the sense that she intended to avail herself of his agency when (and only when) he had taken her check to the state of Vermont, where he could lawfully complete the sale, and he knew that she was intrusting the check to him for that purpose, then his possession of the check in New Hampshire was not the possession of the granite company. In other words, the existence of a dual agency is not incompatible with the facts. *Federal Ins. Co.* v. *Sydeman*, 82 N. H. 482; *Wilson* v. *Atwood*, 81 N. H. 61. See also *Warren* v. *Dodge*, 83 N. H. 47, 54. And it is immaterial so far as this proceeding is concerned that such an arrangement might very properly be regarded as a mere ineffectual shift to evade the provisions of P. L., *c.* 284. The purchaser is protected by the statute (*Karamanou* v. *Company*, 80 N. H. 420), and the question here concerns the nature of the defendant's possession rather than his amenability to that law.

Two of the remaining requests were abstract propositions (taken apparently from 17 R. C. L. 12, 14) relating to common-law larceny and the acquisition of title by fraud. They were inapplicable to the crime with which the defendant was charged, and were therefore properly denied. *O'Dowd* v. *Heller*, 82 N. H. 387, 392, and cases cited.

The final request was for an instruction that the defendant could not be found guilty unless an intention to appropriate existed in his mind "at the time the property came into his hands." This is the common-law rule. Under the statute it is not necessary to prove an original fraudulent intent. 2 Wharton, Crim. Law (11th *ed.*), *ss.* 1211, 1296.

10. The defendant also excepted to the following instruction: "Whether Mr. Hinton was or was not the agent of this Orleans Granite Company is also of no importance except as it may throw

some light upon his conduct and give you some help in determining the motive and intention which prompted that conduct on his part."

As a general statement of the law the instruction was sufficiently favorable to the defendant. His guilt depended upon whether he had been intrusted with the check for the purpose of buying the stock in Vermont, and if so, whether he had converted the check to his own use. A finding of these essential facts was not inconsistent with the existence of the agency claimed. The defendant conceded that he had no lawful authority under P. L., c. 284, s. 17, to sell stock for his principal in New Hampshire, and Mrs. Stillings admitted on cross-examination that she understood he was the granite company's salesman but for some reason could not sell her the stock in this state. If, under the circumstances, the transaction was an attempted sale in New Hampshire, the defendant was not guilty irrespective of his status as an agent of the granite company and regardless of the limitations of his authority. The exception was a general one. Neither the charge nor the granted requests appear in the transferred case. If the defendant desired more specific instructions than were given, he should have requested them. *Monteith* v. *Company*, 82 N. H. 175.

Exception was also taken to the instruction that the jury might consider on the issue of intent the respondent's manner of handling previous transactions of a like nature. This instruction was unexceptionable. *Land Finance Corporation* v. *Company*, 83 N. H. 518.

*Exceptions overruled.*

All concurred.