## PEOPLE v KELLEY

1. CRIMINAL LAW—INDIGENTS—TRANSCRIPTS—DUE PROCESS.

Failure to produce prior to trial upon the motion of an indigent defendant a complete transcript of a prior proceeding against different defendants prosecuted for the same crime was not error where the portions not produced were limited to testimony establishing a rather mundane corpus delicti, and where the defendant was not deprived of facts so essential for impeachment purposes or discovery so that deprivation denied due process.

2. CRIMINAL LAW—CRIMINAL RECORD—INCARCERATION—CONFESSIONS —VOLUNTARINESS.

An inadvertent revelation to a jury of a defendant's criminal record in a 1962 criminal trial did not entitle the defendant to a mistrial where the record shows only the fact of defendant's incarceration and then only as it related to circumstances surrounding obtaining a confession from defendant and where the trial took place at a time when the jury was called upon to determine the voluntariness of a defendant's confession; pursuant to a now abolished rule, prior precedent indicates all the facts surrounding the confession were to be shown to the jury.

3. CRIMINAL LAW—ACCOMPLICES—IMPEACHMENT—UNFLATTERING QUESTIONS.

The prosecution may not seek to impeach the testimony of accomplices or argue that their prior conviction for the same crime by another jury is evidence of another's guilt, but there is no rule of law prohibiting the prosecution from asking unflattering questions of its own witnesses not designed to accomplish such an unlawful purpose.

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 509.
    21 Am Jur 2d, Criminal Law § 233.
[2] 53 Am Jur, Trial § 967.
[3, 5] 53 Am Jur, Trial § 783.
[4] 58 Am Jur, Witnesses § 868.

4. CRIMINAL LAW—WITNESSES—LENIENCY—PROSECUTOR'S DUTY.

   It is incumbent upon the prosecution to show the details to a jury if a prosecution witness has received leniency in return for his testimony.

5. CRIMINAL LAW—WITNESSES—IMPEACHMENT—PRIOR INCONSISTENCY
      —REHABILITATION.

   Rehabilitation of a witness in a criminal case sought to be impeached with prior inconsistency by showing an earlier consistency is proper.

Appeal from Recorder's Court of Detroit, Frank G. Schemanske, J. Submitted Division 1 June 18, 1973, at Detroit. (Docket No. 14981.) Decided September 27, 1973.

Joseph Kelley was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Michael C. Moran,* Assistant State Appellate Defender, for defendant.

Before: QUINN, P. J., and J. H. GILLIS and BASHARA, JJ.

J. H. GILLIS, J. Defendant, Joseph Kelley, was convicted by a jury of first-degree murder on November 23, 1962. He appeals upon delayed leave granted.

Because of the unique history of this case, an explanation of events that led to defendant's arrest and trial is necessary for full understanding of the issues raised on appeal.

On October 4, 1960, David Lipton, the proprietor of a drug store in Detroit, was shot and killed during a holdup. A clerk in the store, Sue Valentine, gave descriptions of the three men who perpetrated the robbery to police who arrived at the scene. She subsequently identified Linberg Hall, Robert Clark, and Secola Kuykendall as the culprits at a lineup and at their trial. In 1961, those three persons were convicted of first-degree murder.

At the insistence of Mr. Max Silverman, the assistant prosecutor who tried the first case, the matter was reopened for investigation. The prosecutor, with the help of Lt. John Ware, uncovered evidence leading to the arrest of Ronald Gilliam, Kenneth Anderson, Edward Lake, Gene, Adams, and defendant Kelley. The convictions against Hall, Clark, and Kuykendall were vacated upon the motion of the prosecution.

Before defendant's case came to trial, his alleged accomplices, Gilliam, Anderson, Lake, and Adams were convicted of the first-degree murder of David Lipton.

The prosecution's evidence at defendant's trial showed Miss Valentine and the decedent were alone in the drug store when, at about 9:30 p.m., a tall, slender man wearing a large bandage under his right eye entered. The man spoke to the decedent while two more men entered. One of the men ordered Miss Valentine to the floor and seconds later she heard a volley of gunfire. After the trio left the store she found Lipton shot. The details of her positive identification of Hall, Clark, and Kuykendall were thoroughly explored on cross-examination and she made no identification of defendant or his alleged accomplices.

Johnnie McCoy, owner of a restaurant across

the street from the drug store, and his wife both testified they heard the gunfire and looked out the window of their establishment. Both Mr. and Mrs. McCoy stated they thereafter saw three men, one of whom wore a patch under his eye, leave the store and turn onto a side street. They could not identify defendant or his alleged accomplices and so testified.

Defendant was shown to have been in an altercation on September 27, 1960 with Wendell Smith who testified he inflicted facial injuries to defendant's right cheek.

Delphine Coleman testified she was with Lake, Adams, and Gilliam on October 4, 1960. She stated the four of them rode in Lake's car that night and picked up the defendant, who wore the bandage on his face, and met Anderson thereafter.

The group then drove to the drug store where defendant, Gilliam, and Adams left the vehicle and entered the store. Anderson, she said, left, as well, but walked away. Shortly thereafter she heard gunfire and when the trio returned it was announced that Lipton had been shot because he had first fired upon Kelley, striking him in the forearm.

Edward Lake corroborated that testimony. However, on cross-examination defense counsel brought out the fact that Lake was not charged as a principal in the case until after he testified at preliminary examination. It was revealed that at the examination stage, where Kelley, Gilliam, Adams, and Anderson were charged, Lake recounted a different story exculpating everyone, and that thereafter Lake was charged with the crime as well.

On redirect, Lake admitted his testimony at the examination was false and testified he had, prior

to that time, told police his present trial testimony. Redirect examination also revealed Lake thereafter stood trial for the Lipton murder.

Defense counsel's first question on recross-examination (and Lake's responses) were as follows:

"*Q.* What are you serving time for now, Eddie?
"*A.* Armed robbery.
"*Q.* Not murder, is that right?
"*A.* That's right."

The prosecution then revealed that while Lake had been convicted of first-degree murder, he had been allowed to plead guilty to armed robbery.

Anderson, Gilliam, and Adams were called as witnesses for the prosecution. Each admitted to having stood trial for the Lipton murder. Anderson corroborated Delphine Coleman's version of the events, but denied knowledge of the robbery and murder, stating he left the scene on his own without incident. Gilliam denied complicity but stated he was present when Adams drew a gun. Kelley, according to Gilliam, was not present. His memory was refreshed with a prior statement where he indicated the contrary. Adams echoed Gilliam's responses that Kelley was not present. Adams' memory was also similarly refreshed.

Prior to trial, defendant, an indigent, moved for production of the trial transcript of the Hall, Clark, and Kuykendall case on the basis that most of the witnesses against him testified at that trial. Only the testimony of Sue Valentine was produced. Defendant asserts on appeal that the failure to produce the balance of testimony was error. We disagree.

We find no significant deprivation by the nonproduction of prior testimony which established the chain of custody of certain of the exhibits, the

identity of the body of Mr. Lipton, or the drawing of maps and diagrams of the scene of the crime. The cause of Mr. Lipton's death was largely uncontested. We find the prior testimony of the witnesses who established those facts was not so essential for impeachment purposes or discovery so that deprivation denied due process.

We realize a financially able defendant could have obtained a transcript of this prior testimony and considerations of equal protection of law are relevant to this issue. See *Griffin v Illinois,* 351 US 12; 76 S Ct 585; 100 L Ed 891 (1956); *Britt v North Carolina,* 404 US 226; 92 S Ct 431; 30 L Ed 2d 400 (1971). However, through hindsight, we perceive the prior testimony sought, but not produced, did not establish crimination of defendant, but only the corpus delicti of the incident, an issue which defense counsel practically conceded at the outset of trial. Moreover, the testimony defendant sought to be produced did not even criminate Clark, Hall, or Kuykendall. Of those who testified in both trials, only Sue Valentine's testimony tended to establish the guilt of any particular person. Thorough examination of the record reveals defense counsel was well versed in the details of the evidence produced in the prior trial, and we are not satisfied that transcription of the testimony there adduced was the only means for obtaining that information. See, *e.g., Miles v Clairmont Transfer Co,* 35 Mich App 319; 192 NW2d 619 (1971); *People v Dellabonda,* 265 Mich 486; 251 NW 594 (1933).

We do not attempt to fashion a rule in this regard for the benefit of the trial bench for each and every case. Our decision here is based on hindsight, but we recognize the dilemma facing our brethren who preside over trials where this

issue initially arises. *People v Joines,* 46 Mich App
427; 208 NW2d 193 (1973), announces that the
state must provide indigent defendants with tran-
scripts of prior proceedings when needed for prepa-
ration of an effective defense. In that regard, we
note that while a financially able defendant might
have seen fit to pay for the production of the Hall-
Clark-Kuykendall transcript, it is apparent it
would have been an unnecessary expenditure.
Clearly, prior testimony offered *against* a particu-
lar defendant is valuable for both discovery and
impeachment purposes. *People v Glass,* 38 Mich
App 735; 197 NW2d 140 (1972). However, we de-
cline to rule that production of prior testimony
establishing a rather mundane corpus delicti of
the same crime in another case against another
defendant is necessary in order to provide a subse-
quent defendant with a fair trial.

Defendant made a tape recorded statement
showing his involvement in the crime. Before the
confession was introduced, the detectives who had
interviewed defendant indicated the statement was
taken in Marquette Prison. That information, al-
though inadvertently given in response to legiti-
mate inquiry, was objected to and formed the basis
of defendant's motion for mistrial. The transcript
provided on appeal shows that after defendant's
motion was denied, the tape-recorded statement
was played, in its entirety, to the jury.[1] The intro-
ductory remarks of the taped statement clearly
show it was obtained in Marquette Prison, and
contained therein is the following passage:

   *"[By defendant]:* I been back in jail now over a year, I

---

[1] The tape recorded statement was not transcribed by the court
reporter. However, in 1968 a *Walker* hearing was held where the text
of the statement was reported. It is from that hearing that the
content of defendant's confession is taken.

been locked up over a year now, ever since I been back in jail, I just been more or less waiting for [an investigation of defendant's involvement]."

` The basis of defendant's motion for mistrial concerned the prejudicial effect on the jury of the revelation of defendant's criminal record. The transcript does not show any argument to the jury on what effect, if any, such a history should have on their deliberation, and it must be remembered that this trial took place at a time when the jury was called upon to determine the voluntariness of a defendant's confession.

Pursuant to that now abolished rule, prior precedent indicates *all* the facts surrounding the confession were to be shown to the jury. *People v Cleveland,* 251 Mich 542; 232 NW 384 (1930); *People v Hepner,* 285 Mich 631; 281 NW 384 (1938). In at least one case, the fact of incarceration at the time of confession was considered a principal factor on the issue of voluntariness. See *People v Barker,* 60 Mich 277; 27 NW 539 (1886). Since the record only shows the fact of incarceration, and then only as it related to the circumstances surrounding obtaining the confession, we cannot say the trial court erred in denying the motion for mistrial. See also *People v Harry Fleish,* 321 Mich 443; 32 NW2d 700 (1948).

Defendant contends it was error to allow the prosecution to impeach Anderson, Gilliam, and Adams by asking if they had been tried for the Lipton murder. While it is true that the prosecution may not seek to impeach the testimony of accomplices, *People v Green,* 32 Mich App 482, 486; 189 NW2d 122, 124 (1971); *People v Virgil Brown,* 15 Mich App 600; 167 NW2d 107 (1969), or argue that their prior *conviction* for the same crime by another jury is evidence of another's

guilt (see *People v Eldridge,* 17 Mich App 306; 169 NW2d 497 [1969]), we know of no rule of law that prohibits the prosecution from asking unflattering questions of its own witnesses not designed to accomplish such an unlawful purpose.

Review of the record shows the questions put to these accomplices were not designed to impeach their testimony. Their *convictions* were not put forward by the prosecution. The inquiry served to establish that the prosecution had not "singled out" one defendant for prosecution as well as showing that those witnesses, protected by the doctrine of former jeopardy, had no motive for lying. The fact that some of their subsequent testimony did not precisely establish defendant's culpability does not mean the questions were designed to impeach credibility.

The transaction concerning the production of Edward Lake's testimony is not error. If a prosecution witness has received leniency in return for his testimony, it is incumbent upon the prosecution to show the details. Rehabilitation of a witness sought to be impeached with prior inconsistency by showing an earlier consistency is proper.

Affirmed.

All concurred.