PEOPLE v JACQUELINE BROWN

Docket No. 63290. Submitted February 7, 1983, at Grand Rapids.— Decided July 6, 1983.

Defendant, Jacqueline Brown, was convicted of manslaughter following a bench trial in the Recorder's Court of Detroit, John H. Gillis, Jr., J. The joint trial of the defendant and her codefendant, Bennie Ruth Audison, commenced on June 8, 1981, but, on that day, defendant's oral motion for severance was granted by the trial court. Ms. Audison's trial began the following day and resulted in her conviction for manslaughter and felony-firearm. Defendant was tried and convicted later that year. Defendant appeals alleging that the trial court erred in denying her pretrial motion for a transcript of codefendant Audison's earlier trial and in failing to rule on her initial motion to quash the information. *Held:*

1. Where an indigent defendant requests that the state provide him with a free transcript of the separate trial of a codefendant, the defendant must show that the transcript will be valuable to him.

2. The trial court did not err in denying defendant's request for the production of portions of the Audison trial transcript. Defendant did not show in the trial court or on appeal how the transcript would have assisted her in trial preparation or the impeachment of witnesses.

3. The trial court did rule on defendant's initial motion to quash the information. The service voucher submitted by defendant's attorney indicates that the motion was denied.

Affirmed.

CRIMINAL LAW — PAUPERS — TRANSCRIPTS OF CODEFENDANT'S TRIAL.

An indigent defendant must make a showing that the transcript of a separate trial of a codefendant will be valuable to him in his trial where the defendant requests that the state provide him with such a transcript.

REFERENCE FOR POINTS IN HEADNOTE
21A Am Jur 2d, Criminal Law §§ 811, 824.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Rosemary A. Gordon,* Assistant Prosecuting Attorney, for the people.

*Socorro G. Arce,* for defendant on appeal.

Before: R. M. MAHER, P.J., and R. B. BURNS and P. J. MARUTIAK,* JJ.

R. M. MAHER, P.J. Defendant was convicted after a bench trial of manslaughter, MCL 750.321; MSA 28.553. Sentenced to from 2 to 15 years in prison, she appeals as of right.

In the early morning hours of January 2, 1981, Vincent Williams, his half-brother, Russell Williams, and three other men were standing on the corner of Linwood and Virginia Park in Detroit when a grey Buick pulled up to the opposite side of the street. The car contained defendant and Bennie Ruth Audison. Vincent Williams and one of his companions approached the car and engaged the women in a conversation. The conversation became heated and the two women departed. However, they returned five minutes later. Ms. Audison got out of the car and produced a gun. She fired two shots, causing Vincent Williams and his brother to flee. Ms. Audison returned to the car. Defendant then attempted to turn the car around but succeeded only in sliding into a building. Vincent Williams and his brother approached the vehicle. Ms. Audison emerged, brandished a gun and threatened to kill one of the men. Defendant then got out of the car and told Ms. Audison to "shoot the mother fucker". Ms. Audison fired an-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

other shot which struck Vincent Williams, who died the following day.

A joint trial of defendant and Ms. Audison was commenced on June 8, 1981, but, on that day, defendant's oral motion for severance was granted by the trial court. Ms. Audison's trial began the following day resulting in her conviction for manslaughter and felony-firearm, MCL 750.227b; MSA 28.424(2). Defendant was tried and convicted later that year.

Defendant raises two issues which we discuss in the order presented.

First, defendant argues that the trial court erred in denying her pretrial motion for the transcript of codefendant Audison's earlier trial. On August 17, 1981, defendant, an indigent, moved for production of portions of the transcript of codefendant Audison's trial. At the hearing on the motion defense counsel requested, in particular, transcripts of defendant's testimony and of the testimony of any eyewitnesses linking defendant to the homicide. The trial court denied the motion. The court noted that a transcript of the Audison trial was being prepared for Ms. Audison's appeal,[1] that it would be ready before defendant's trial and that preparation of another copy would be unduly expensive. In addition, the court reminded defense counsel that the defendant's previous attorney had been present during her testimony at the Audison trial.

The United States Supreme Court in *Britt v North Carolina,* 404 US 226; 92 S Ct 431; 30 L Ed 2d 400 (1971), ruled that a state must provide an indigent defendant with a transcript of his earlier trial if a transcript is needed for an effective defense. The *Britt* Court recognized that whether

---

[1] See *People v Audison,* 126 Mich App 829; 338 NW2d 235 (1983).

the request for a free transcript should be granted depends on two factors: (1) the value of the transcript to the defendant and (2) the availability of alternative means which would fulfill the same functions as a transcript. The Court indicated that, as to the first factor, the defendant need not show that a transcript of his earlier trial would be valuable to him:

"* * * Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case. * * * [E]ven in the absence of specific allegations *it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses.*" (Emphasis added, footnote omitted.) 404 US 228; 92 S Ct 434; 30 L Ed 2d 404.

This Court has consistently followed the *Britt* analysis. See *People v Glass,* 38 Mich App 735; 197 NW2d 140 (1972); *People v Hampton,* 89 Mich App 434; 280 NW2d 461 (1977); *People v Hughes,* 93 Mich App 333; 287 NW2d 226 (1979), *rev'd on other grounds* 411 Mich 517; 309 NW2d 525 (1981).

This case, however, is distinguishable from *Britt* in a critical respect. In *Britt,* the defendant requested a transcript of his *own* earlier trial. In this case, the defendant asked for a copy of the transcript of her *codefendant's* trial. A situation similar to the one we confront in the instant case, however, was presented to this Court in *People v Kelley,* 49 Mich App 720; 212 NW2d 750 (1973). In *Kelley,* three men, Clark, Hall and Kuykendall, were convicted of the murder of David Lipton. At the trial, several witnesses testified, including Sue Valentine who saw the assailants seconds before

the murder. Subsequently, the convictions were vacated on the prosecutor's motion and the murder investigation was reopened. Five persons, including the defendant, were then charged with the murder. The defendant was tried separately from the other four and after the people had secured their convictions. Prior to his trial, the defendant moved for the production of the transcript of the trial of the original three suspects. Only the testimony of Sue Valentine was produced. The defendant was later convicted of the murder. On appeal, the defendant argued that the failure to produce the entire transcript was error. This Court disagreed, reasoning as follows:

"[W]e perceive the prior testimony sought, but not produced, did not establish crimination of defendant, but only the corpus delicti of the incident, an issue which defense counsel practically conceded at the outset of trial. Moreover, the testimony defendant sought to be produced did not even criminate Clark, Hall, or Kuykendall. Of those who testified in both trials, only Sue Valentine's testimony tended to establish the guilt of any particular person. Thorough examination of the record reveals defense counsel was well versed in the details of the evidence produced in the prior trial, and we are not satisfied that transcription of the testimony there adduced was the only means for obtaining that information.

\* \* \*

\* \* \* [W]e decline to rule that production of prior testimony establishing a rather mundane corpus delicti of the same crime in another case against another defendant is necessary in order to provide a subsequent defendant with a fair trial." 49 Mich App 725, 726.

In effect, the *Kelley* Court, which examined the value that the transcript would have to the defendant, abandoned *Britt's* presumption that a re-

quested transcript would be valuable to the defendant. *Kelley* seems to require a particularized showing of need where a defendant requests a transcript of a proceeding held in a case to which he was not a party.

The present case is distinguishable from *Kelley.* Here, the defendant requested a transcript of the trial of her codefendant. Clark, Hall and Kuykendall, however, were not Kelley's codefendants, even though they were charged with the same crime. Nevertheless, courts in other jurisdictions have required a showing of particularized need where a defendant requests a transcript of a proceeding involving a codefendant.[2] The position taken by the Court in *State v Razinha,* 123 Ariz 355, 358; 599 P2d 808, 811 (Ariz App, 1979) is typical:

"We do not believe a contention that the transcript of the trial of a third person is needed for an effective defense can be rejected out of hand merely by saying that no case has so held. Instead, the two-pronged test of necessity set forth in *Britt* must be applied to the facts. However, the first prong of the test, the value to the defendant, cannot be assumed as it was in *Britt.* There must be a showing of specific need. A mere showing that the prior trial was that of a co-defendant is not sufficient. [Citations omitted.] The reason for distinguishing between the *Britt* situation, a prior mistrial, and a situation analogous to the one here, a trial of a co-defendant, is that the witnesses may not be common. Even if they are, their testimony as to the co-defendant may differ greatly from their proposed testimony concerning the defendant's part in the crime, depending upon the circumstances of each case."

[2] See, *e.g., State v Coe,* 223 Kan 153; 574 P2d 929 (1977); *State v Peterson,* 46 Ohio St 2d 425; 349 NE2d 308 (1976); *State v Cox,* 101 NJ Super 470; 244 A2d 693 (1968); *State v McAllister,* 287 NC 178; 214 SE2d 75 (1975); *State v Tison,* 129 Ariz 526; 633 P2d 335 (1981), *cert den* — US —; 103 S Ct 180; 74 L Ed 2d 147 (1982), *reh den* — US —; 103 S Ct 391; 74 L Ed 2d 520 (1982).

We agree and hold that where a defendant requests that the state provide him with a free transcript of the separate trial of a codefendant, the defendant must show that that transcript will be valuable to him.

In the present case, defendant did not show in the trial court and does not show on appeal how the transcript of the Audison trial would have assisted in trial preparation or impeaching witnesses. Therefore, we hold that the trial court did not err in denying defendant's motion for the production of portions of the Audison trial transcript.

Defendant's second and final claim of error is that the trial court failed to rule on her initial motion to quash the information. After reviewing the record, however, we are satisfied that the court did rule on the motion. The record contains a service voucher from defendant's attorney indicating that the motion was denied. The voucher contains an affidavit signed by defense counsel to the effect that all the statements in the voucher are true. Although we are distressed to find that no better records were kept of the ruling on the motion, we believe that such a ruling did occur.

Affirmed.