523 So.2d 504 (1987)
Samuel James NICKERSON
v.
STATE.
6 Div. 634.
Court of Criminal Appeals of Alabama.
May 26, 1987.
Rehearing Denied June 30, 1987.
On Return to Remand April 12, 1988.
*505 David Gespass of Gespass & Johnson and L. Dan Turberville, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Fred F. Bell, Asst. Atty. Gen., for appellee.
BOWEN, Presiding Judge.
Samuel James Nickerson was convicted, in two cases consolidated for trial, of robbery and sentenced to life imprisonment in each case. The cases were tried September 10-12, 1984. While this case was pending on appeal[1] the United States Supreme Court held, in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." Batson, 476 U.S. at 89, 106 S.Ct. at 1719. The rule announced in Batson applies to all cases pending on direct appeal at the time of the Supreme Court's decision. Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

I
During the striking of the jury at the defendant's trial, which occurred over a year and a half before Batson was handed down, defense counsel objected to the State's use of its peremptory strikes to remove blacks from the venire, as follows:
"THE COURT: All right. The State is first. (Jury struck, during which the following proceedings were held sidebar:)
"MR. TURBERVILLE: Your Honor, in thePrevious to this trial when Mr. Anderton has been the prosecutor he has used his strikes to systematically eliminate all blacks from the venire. This venire has five out of twenty-seven. And he's used so far three out of the first five strikes to eliminate blacks. He has two strikes left and there are two blacks left. I think the pattern is clear based on the two previous cases where he used his strikes to eliminate all blacks that he's going to do the same thing in this trial, thereby denying the defendant a trial by his peers under equal process. I ask that a mistrial be declared and a new venire called. And I ask if that's denied that he be instructed to cease and desist from using his strikes to eliminate blacks.
"THE COURT: I overrule.
"MR. TURBERVILLE: We except, Your Honor. (Jury struck, after which the following proceedings were held:)

*506 "MR. TURBERVILLE: Your Honor, we renew our objection on the same grounds.
"THE COURT: Overruled."
The foregoing objection was sufficient to preserve the issue of purposeful discrimination for review. See Edwards v. State, 515 So.2d 86 (Ala.Cr.App.1987). In order to establish a prima facie case of denial of equal protection, the defendant must show: (1) "that he is a member of a cognizable racial group"; (2) "that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race"; and (3) "that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice [peremptory challenges] to exclude veniremen from the petit jury on account of their race." Batson, 476 U.S. at 96, 106 S.Ct. at 1723; Swain v. State, 504 So.2d 347 (Ala.Cr.App.1986). Although the objection did not specifically allege that the defendant was a black man, in fulfillment of requirement (1) set out by the Court, cf. Esposito v. Buonome, 642 F.Supp. 760, 761 (D.Conn.1986), it was no doubt obvious to the trial court that the defendant was a "member of a cognizable racial group." Furthermore, the testimony of the first witness for the State established that fact in the record before us. Thus we remand this cause for a hearing in order that the trial court may determine whether the facts establish a prima facie case of purposeful discrimination in selection of the jury. If the trial court determines that the defendant presented a prima facie case and the prosecutor is unable to come forward with race-neutral reasons for his peremptory strikes, the defendant is entitled to a new trial. Batson, 476 U.S. at 100, 106 S.Ct. at 1725.

II
The trial court did not err by refusing to provide the defendant with a free transcript of the pre-trial suppression hearings. State v. Coe, 223 Kan. 153, 574 P.2d 929 (1977). Cf. Leonard v. State, 369 So.2d 873, 875 (Ala.Cr.App.), cert. denied, Ex parte Leonard, 369 So.2d 877 (Ala.1979) (no right to free transcript of preliminary hearing).
Although "the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal," Britt v. North Carolina, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971), "the availability of alternative devices that would fulfill the same functions as a transcript," id., 404 U.S. at 227, 92 S.Ct. at 434, provides an adequate substitute for a transcript in many cases. The suppression hearings in the present case, like the prior proceedings in Britt v. North Carolina, were conducted by the same judge and with the same defense counsel as those who appeared at trial, which took place within three months of the pre-trial suppression hearings.
"In these circumstances, ... petitioner's memory and that of his counsel should have furnished an adequate substitute for a transcript. In addition, ... petitioner could have called the court reporter to read to the jury the testimony given at the [suppression hearing], in the event that inconsistent testimony was offered at the ... trial." Britt, 404 U.S. at 228-29, 92 S.Ct. at 434.

III
The robbery indictments were properly consolidated for trial under the provisions of Rule 15.3(b), A.R.Crim.P.Temp., allowing the consolidation of offenses which could have been joined in a single indictment. "Two or more offenses may be joined in an indictment ... if they (i) are of the same or similar character." A.R.Crim. P.Temp. 15.3(a).
"This ground of joinder has caused considerable difficulty because of the obvious danger of prejudice to the accused. C. Wright, Federal Practice and Procedure: Criminal 2d § 143 (1982):
"`Decisions applying the "same or similar character" test have generally failed "to provide criteria which would provide guidance as to the precise scope of the rule." The view seems to be gaining acceptance, however, that the most important *507 consideration is whether evidence of one offense would have been admissible at a trial of the other offense.' Federal Practice at § 143." Jenkins v. State, 472 So.2d 1128, 1129 (Ala.Cr.App. 1985).
The two robberies with which the defendant was charged occurred at two Jack's Hamburger establishments in Birmingham, one at Sixth Avenue Southwest and the other at Eighth Avenue West. The robberies happened at mid-afternoon within sixteen days of each other. The same witness was present at both restaurants and identified the defendant as the perpetrator on both occasions. While the Eighth Avenue robbery was in progress, this witness, Larry Phillips, exclaimed to his companions that the assailant was the same man who had committed the robbery at the Sixth Avenue location. On both occasions, the robber carried a pistol, removed all the money from the cash registers, and forced the manager to open the safe at the rear of the restaurant. The similarities between the two offenses might be sufficient to characterize the offenses as "signature crimes" so that the similarities would be admissible to prove the identity of the perpetrator, see Thomas v. State, 409 So. 2d 955, 956 (Ala.Cr.App.1981), if it were not for the fact that two robbers perpetrated the Sixth Avenue offense while a single man accomplished the Eighth Avenue robbery. Compare Nicks v. State, 521 So.2d 1018 (Ala.Cr.App.1987) (Court did not decide applicability of identity exception in case where collateral offense involved two robbers and charged offense involved only one robber). In our judgment, however, evidence of one Jack's Hamburger robbery would have been admissible at the trial of the other offense because identity was the central issue at trial and the testimony of witness Larry Phillips was directly relevant to the issue of identity, regardless of the applicability of the "signature crimes" exception:
"Under both federal and Alabama law, identity may also be established by factors other than similarity of acts. For example, in federal court, evidence of the sudden acquisition of money immediately after a bank robbery has been held admissible to identify the defendant as the robber. In Terry v. State, [397 So.2d 217 (Ala.Cr.App.), cert. denied, 397 So.2d 223 (Ala.1981) ] the Alabama court held that the fact that the defendant had accosted the witness on prior occasions and that he had twice attempted to enter her home through a bedroom window was admissible to identify the defendant as the person who fired a pistol through the same window a week later and hit another person. In Burlison v. State, [369 So.2d 844 (Ala.Cr.App.), cert. denied, 369 So.2d 854 (Ala.1979) ] the court held that particles of glass that were found in the defendant's jacket were admissible to identify the defendant, whose hands were bleeding, as the person who broke into other vehicles at the same time in the same area." Schroeder, Evidentiary Use in Criminal Cases of Collateral Crimes and Acts: A Comparison of The Federal Rules And Alabama Law, 35 Ala.L.Rev. 241, 255 (1984).
As this court observed in Nicks v. State, supra, "[w]here evidence relating to other offenses has a natural tendency to corroborate or supplement admitted direct evidence, an exception is made to the general rule excluding evidence of other offenses." The list of exceptions to the collateral crimes rule is not ironclad. As Judge McElroy observed, "`[I]t must not be considered that such a listing of admissible purposes was intended to be exhaustive. It must ever be borne in mind that the state may prove the accused's commission of another crime if such other crime is relevant for any purpose other than that of showing his guilt through the medium of bad character.'" C. Gamble, McElroy's Alabama Evidence § 69.01(1) at 135 (3d ed. 1977).
Although we find that the two robbery cases were properly consolidated for trial, we note that the record is ambiguous concerning whether the defendant was given an opportunity to be heard prior to the court's consolidation order. At one point in the record, the trial court ordered the two cases consolidated "over defendant's objection" *508 (R. 363), implying that counsel was heard on the matter, while at another point the record reflects the following order by the court (R. 366):
"This the 2nd day of August, 1984, it is ordered by the Court that this case be and the same is consolidated for trial purposes with case numbered CC 84-1377. The defense attorney is to be notified. If defense attorney desires a hearing on unconsolidation, the Court will set one at his request." (Emphasis added).
Rule 15.3(b), A.R.Crim.P.Temp., provides the defendant with an opportunity to be heard prior to consolidation and is mandatory. Ex parte Glanton, 474 So.2d 156, 157 (Ala.1985); Ex parte Jones, 473 So.2d 545, 546 (Ala.1985). "Affording an opportunity to move for severance after consolidation fails to cure the prejudicial error resulting from violation of the rule." Ex parte Jones, 473 So.2d at 546 (emphasis in original).
If the trial court determines that the defendant is not entitled to a new trial pursuant to the mandate of Batson, supra, we direct the court to "make a finding of fact on the issue of whether the appellant, while represented by counsel, was given an opportunity to be heard on the issue of consolidation at some time before the motion to consolidate was granted, to make a record of such proceeding, and forward it to us." Blackmon v. State, 487 So.2d 1022, 1027 (Ala.Cr.App.1986). In the event the trial court orders a new trial following a Batson hearing, then no additional findings need be forwarded to this court, since we presume that before any retrial the defendant will be given the opportunity to be heard on the issue of consolidation. The trial court shall notify this Court if a new trial is granted.
We have examined the other issues raised and find they are unlikely to reoccur in their present posture in the event of a retrial.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Presiding Judge.
On remand to the circuit court and evidentiary hearing was held, after which the trial judge concluded, "The defendant presented a prima facie case and the prosecutor failed to come forward with race neutral reasons for his peremtory strikes. Defendant in both cases (CC 84-1199 and CC 84-1377) is entitled to a new trial."
Consequently, jurisdiction of this cause is remanded to the circuit court. New trials having been ordered, this appeal is moot and is hereby dismissed.
OPINION EXTENDED; CAUSE REMANDED; APPEAL DISMISSED.
All Judges concur.
NOTES
[1] This case was submitted for decision in October of 1985 to another judge on the Court of Criminal Appeals. It was reassigned to Judge Bowen in February of 1987.