SMITH, Justice.
Demarlos Mentrel Davis was convicted of attempted first-degree rape and was sentenced to 30 years’ imprisonment. Davis’s conviction occurred at his third trial; his two earlier trials had resulted in mistrials. In an unpublished memorandum, the Court of Criminal Appeals affirmed Davis’s conviction and sentence. Davis v. State (No. CR-06-1997, Oct. 24, 2008), 33 So.3d 649 (Ala.Crim.App.2008) (table). We granted Davis’s petition for a writ of certiorari to determine whether Davis’s request for transcripts of his two previous trials, which was denied, should have been granted.

Facts and Procedural History

On August 27, 1997, a man entered Andrews Bridal Shop in Dothan. After speaking with the sales clerk, A.D., for several minutes about getting a tuxedo for a wedding, the man grabbed A.D. from behind and attempted to force her into a back room of the store. A.D. fought back and eventually freed herself, ran to the back room, and locked the door, leaving the man to flee from the front of the store. The Dothan Police Department conducted an investigation and collected items found in the store believed to have been left behind by the perpetrator. The Dothan Police Department also conducted several photographic lineups, but A.D. was unable to identify the perpetrator.
On September 29, 1997, an investigator with the Birmingham Police Department contacted Sgt. Burén Wambles of the Do-than Police Department and informed him that Davis had been arrested in Birmingham for first-degree rape and first-degree sodomy. Davis had given the Birmingham investigator a Dothan address. The Birmingham investigator inquired about whether Dothan had any unsolved sex crimes. On September 30, Sgt. Wamble and Sgt. Roy Woodham traveled to Birmingham to interview Davis. They returned to Dothan with a photograph of Davis and presented it to A.D. in a photographic lineup containing six photographs. A.D. identified Davis as her attacker.
*708 Davis was indicted on March 13, 1998, by the Houston County grand jury on the charge of attempted first-degree rape. His first trial ended in a mistrial on September 16, 1999; his second trial ended in mistrial on May 10, 2001. James Parkman III represented Davis at both trials. On February 6, 2007, Davis, represented by new counsel, requested a copy of the transcripts of each of his prior trials, stating that he was indigent and had been granted permission to proceed in forma pauperis. The trial court denied Davis’s motion the following day, without a hearing. A third trial was held, and on May 23, 2007, the jury found Davis guilty of attempted first-degree rape, a violation of § 13A-4-2 and § 13A-6-61, Ala.Code 1975. Davis was sentenced to 30 years’ imprisonment, pursuant to Alabama’s Habitual Felony Offender Act, § 13A-5-9 et seq., Ala.Code 1975.
Davis appealed his conviction to the Court of Criminal Appeals, which affirmed his conviction in an unpublished memorandum. In his petition to this Court for a writ of certiorari, Davis argued that the decision of the Court of Criminal Appeals ignored the United States Supreme Court’s holding in Britt v. North Carolina, 404 U.S. 226, 228, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), regarding the circumstances under which an indigent defendant must be provided with the transcripts of a prior trial that ended in a mistrial. Davis also cited the holding in Zeigler v. State, 426 So.2d 526, 527 (Ala.Crim.App.1983), that, in the absence of a showing by the State that there are adequate alternatives to the defendant’s receiving a copy of the trial transcript, the trial court must provide an indigent defendant with a copy of the transcript of the trial.

Discussion

In Britt v. North Carolina, the United States Supreme Court stated that “there can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal.” 404 U.S. at 227, 92 S.Ct. 431. The Court identified two factors that are relevant to determining an indigent defendant’s need for a free transcript of a previous trial: “(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript.” Id.
The Court of Criminal Appeals held in its unpublished memorandum that Davis failed to prove either of the factors identified by the United States Supreme Court in Britt. Davis contends that the decision of the Court of Criminal Appeals conflicts with Britt, supra, and with Alabama cases interpreting and applying Britt.
As to the first factor under Britt, the Court of Criminal Appeals stated in its unpublished memorandum:
“Davis made broad and vague arguments about the times of his trials ... stating that his demand for the transcripts displayed that they were obviously needed. His statement that ‘necessity of transcripts to an effective defense’ should be presumed ... is speculative and is not sufficient grounds [on which] to grant relief. Davis failed to show how he was prejudiced by not having the prior trial transcripts.... Davis with no specificity has pointed to how his defense was weakened by the absence of the transcripts. Therefore, this court affirms the trial court’s judgment.”
In Britt, the United States Supreme Court affirmed the lower court’s judgment denying an indigent defendant’s motion for a free transcript of his prior trial, which had ended in a mistrial. However, the *709 Court’s decision rested on the second factor of the analysis for determining need, not the first factor regarding the value of the transcript to the defendant. In support of its holding, the Court stated:
“[T]here would be serious doubts about the decision below if it rested on petitioner’s failure to specify how the transcript might have been useful to him. Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case.... Even in the absence of specific allegations it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses.”
404 U.S. at 228, 92 S.Ct. 481 (footnote omitted; emphasis added). This language from Britt indicates that a defendant ordinarily does not have to demonstrate with specificity that a transcript of a prior proceeding is valuable to his or her defense.
In support of its holding that Davis was required to demonstrate specifically how the requested transcripts would assist his defense, the Court of Criminal Appeals in its unpublished memorandum cites McKinney v. State, 665 So.2d 209 (Ala.Crim.App.1995). In McKinney, the Court of Criminal Appeals affirmed the trial court’s denial of the defendant’s motion for a free transcript of his juvenile transfer hearing, stating:
“[T]he appellant made no argument to the trial court as to how the transcript of the juvenile proceedings would assist his defense in his criminal trial. Nor has the appellant, on appeal, made any showing of how his defense was weakened due to the absence of a transcript of the juvenile proceedings.”
665 So.2d at 211. The Court of Criminal Appeals apparently concluded that this statement from McKinney suggests that the defendant has the burden of affirmatively demonstrating that his request for a transcript of a prior proceeding satisfies the first factor under Britt. McKinney, however, turned on circumstances different from those in Davis’s case.
In McKinney, the Court of Criminal Appeals held that a showing of how the requested transcript would assist the defendant was necessary because the requested transcript was of a prior juvenile proceeding. Specifically, the court stated:
“Although Britt provides that the value to the defense of a transcript of prior proceedings may usually be presumed, this court has not extended the rationale of Britt so far as to recognize the value that a transcript of proceedings in juvenile court may have in every case where a defendant is transferred to circuit court for trial as an adult.”
665 So.2d at 211. Thus, although the McKinney court recognized the general presumption from Britt stated above regarding the value to a defendant of a transcript of a prior trial that ended in a mistrial, the court in McKinney declined to extend that presumption to requests for transcripts of a prior juvenile transfer hearing. The court cited, in support of its decision, precedent establishing that “[a]n indigent defendant is not entitled to a free transcript of the testimony taken at his preliminary hearing,” 665 So.2d at 211 (citing Leonard v. State, 369 So.2d 873, 875 (Ala.Crim.App.1979)), and reasoned that “[a] juvenile transfer hearing is in the nature of a preliminary hearing,” 665 So.2d at 211 (citing O.M. v. State, 595 So.2d 514, 517 (Ala.Crim.App.1991)). The McKinney court explained the difference between a transcript of a defendant’s earli *710 er mistrial, as in Britt, and a transcript of a juvenile proceeding, as in McKinney:
“It would set a dangerous precedent to hold, based on nothing more than a defendant’s bare assertion of need, that a transcript of proceedings in juvenile court is always necessary to a defense in a criminal trial, particularly in light of the fact that the record of the proceedings in juvenile court is required to be preserved only until the time for appeal has expired.”
665 So.2d at 211. Finally, the McKinney court noted that McKinney did not appeal the juvenile court’s order transferring him to the circuit court to be tried as an adult. McKinney, 665 So.2d at 210.
Thus, McKinney held that because the presumption in Britt regarding the value to a defendant of a transcript of a prior trial did not apply to a defendant’s request for a transcript of his earlier juvenile transfer hearing, the defendant was required to make a specific showing of his need for a transcript of a juvenile transfer hearing. That holding in McKinney, however, has no application to Davis’s request in the present case for the transcripts of his earlier mistrials.
In his brief to the Court of Criminal Appeals and his brief to this Court, Davis cites Grayson v. State, 824 So.2d 804 (Ala.Crim.App.1999), in support of his argument that a showing of a defendant’s need for' a transcript of an earlier proceeding may be satisfied without a specific showing of that need. The defendant in Grayson was convicted of capital murder. He argued on appeal that the trial court committed reversible error by refusing to supply defense counsel with copies of the transcripts from the trials of his codefendants. Rejecting his argument, the court stated:
“ ‘ “We do not believe a contention that the transcript of the trial of a third person is needed before an effective defense can be rejected out of hand merely by saying that no case has so held. Instead, the two-pronged test of necessity set forth in Britt must be applied to the facts. However, the first prong of the test, the value to the defendant, cannot be assumed as it was in Britt.” ’ ”
Grayson, 824 So.2d at 825 (quoting People v. Brown, 126 Mich.App. 763, 768, 337 N.W.2d 915, 918 (1983), quoting in turn State v. Razinha, 123 Ariz. 355, 358, 599 P.2d 808, 811 (Ct.App.1979)). The Grayson court, however, acknowledged that although the first prong of the necessity test would not be presumed when the requested transcript was the transcript of the trial of a codefendant, the “value of the transcript to the defendant” would be presumed in situations where the indigent defendant requested transcripts of his own prior mistrial, as in Britt.
The State cites Quick v. State, 825 So.2d 246 (Ala.Crim.App.2001), as an example of a case where, it says, a defendant “met his burden of showing prejudice.” In Quick, the defendant’s first capital-murder trial ended in a mistrial. Before his second trial, the indigent defendant requested a free copy of the transcript of his mistrial. The defendant’s motion for a free trial transcript was denied, and the defendant was convicted of capital murder. At the second trial, counsel for the defendant attempted to use his notes and memory from the previous trial to impeach witnesses concerning their testimony at the previous trial, but each time he attempted to do so, the trial court refused to permit it, stating:
“ ‘[Tjhere may be one in a million [occasions] where it becomes necessary [to impeach a witness pursuant to prior testimony], but you may do it from a transcript. But if it is done from your notes or from your recollection, then in the Court’s opinion and in the Court’s finding, then you are pitting your memory *711 against the witness’s .... He can’t pit his notes — unless they are notes taken before this jury. This jury, not another jury or reporter, unless it is an official transcript.’ ”
Quick, 825 So.2d at 254 (quoting the trial court). On appeal, the defendant argued that his constitutional rights had been violated because, he said, as an indigent defendant, he should have been provided a free transcript of his first trial. Citing Britt, the court in Quick stated that “ ‘ “the availability of alternative devices that would fulfill the same functions as a transcript” ... provides an adequate substitute for a transcript in many cases.’ ” Quick, 825 So.2d at 261 (quoting Nickerson v. State, 523 So.2d 504, 506 (Ala.Crim.App.1987)). However, the court went on to say:
“[I]n the present case, the trial court refused to allow defense counsel to use his notes from the prior trial or his memory in order to impeach the witnesses. Thus, there were no alternatives available to the appellant.
[[Image here]]
“... [Bjecause the appellant, as an indigent, was entitled to the transcript of his prior mistrial of this case, or the use of an adequate alternative, ... the judgment is due to be reversed and the cause remanded for a new trial.”
825 So.2d at 261-62.
The decision in Quick is not, however, inconsistent with the general rule stated in Britt that the “value of the transcript to the defendant” may ordinarily be presumed. Rather, in Quick, the defendant demonstrated that the trial court had prevented him from using other available alternatives to the requested transcript.
As the foregoing discussion illustrates, under Britt the value to the defendant of a requested transcript ordinarily may be presumed. Thus, an indigent defendant requesting a transcript of a prior mistrial generally is not required to specify how the trial transcript would be useful to the defendant. The State has not demonstrated that the presumption outlined in Britt should not apply here. Therefore, in Davis’s case, the first factor under Britt has been satisfied.
The second factor identified in Britt relevant to the determination of the defendant’s need for a free transcript is the availability of alternative devices that would fulfill the same functions as the transcript. In McKinney, the Court of Criminal Appeals listed several alternatives available to the defendant that would have served the same function as the requested trial transcript, including defense counsel’s recollections, access to the court reporter’s notes, and calling the court reporter from the previous trial to testify as to what happened at the previous trial. McKinney, 665 So.2d at 210. Citing McKinney, the Court of Criminal Appeals in its unpublished memorandum in the present case held that, because Davis did not attempt to contact his former attorney or the court reporter from the two previous mistrials, he did not “avail himself of adequate existing alternatives to support his defense” and thus was not entitled to a free trial transcript.
Davis contends, however, that the State has the burden of proving the existence of adequate alternatives and that the alternatives identified by the Court of Criminal Appeals here were not adequate. He argues, therefore, that the State has not met its burden of proving that adequate alternatives to the trial transcripts exist. We agree.
In Britt, the United States Supreme Court stated: “A defendant who claims the right to a free transcript does not, under our cases, bear the burden of proving inad *712 equate such alternatives as may be suggested by the State or conjured up by a court in hindsight.” Britt, 404 U.S. at 280, 92 S.Ct. 431. Further, in Zeigler, supra, the Court of Criminal Appeals recognized that a defendant does not have the burden of proving that there were no adequate alternatives to the transcripts of his two prior trials available to him.
In Zeigler, the indigent defendant sought to have his second-degree-forgery conviction overturned. 436 So.2d at 526. The defendant’s first two trials had resulted in mistrials, and his conviction was the result of a third trial. Consistent with Britt, the court in Zeigler recognized that the State has the burden of showing that an indigent defendant had adequate alternatives to the trial transcript:
“In view of the holding in Britt v. North Carolina, supra, and in the absence of some showing by the State that there [were] available ‘alternative devices that would fulfill the same functions as a transcript’ the trial court was obligated to provide a transcript of those proceedings.”
426 So.2d at 527 (emphasis added).
Here, the Court of Criminal Appeals improperly shifted the burden to Davis to prove that he had availed himself of all adequate alternatives before he was entitled to free transcripts of his prior trials. Under both Britt and Zeigler, the burden is on the State to show that the defendant had adequate alternatives to the requested transcript available. Absent such a showing by the State, an indigent defendant is entitled to receive the requested trial transcripts.
In the present case, Davis’s first mistrial took place nearly eight years before the trial in which he was convicted, and his second mistrial occurred almost six years before his conviction. Davis’s attorney at his third trial was not the attorney who had represented him at his two mistrials. Further, the judge presiding over Davis’s first trial was not the same judge who presided over Davis’s second and third trials.
In Britt, the time between the mistrial and the second trial was only a month, and the evidence indicated that the court reporter for the mistrial was a good friend of all the local attorneys and would have at any time before the second trial provided defendant’s counsel with notes from the mistrial. Britt, 404 U.S. at 229, 92 S.Ct. 431. Because the defendant conceded that he “could have obtained from the court reporter far more assistance than that available to the ordinary defendant” and thus had an informal alternative available to him that was “substantially equivalent to a transcript,” the Court in Britt found that the trial court did not err in denying the defendant’s motion for a free transcript of his earlier trial. However, the Court made it clear that its holding applied only “in the narrow circumstances of this case” in which the defendant conceded that he had an adequate alternative to the trial transcript. 404 U.S. at 227, 92 S.Ct. 431. Here, Davis has not conceded or suggested that he had any alternatives available to him that would have served the same function as the requested transcripts.
In its brief to this Court, the State cites the following from Nickerson v. State, supra:
“Although ‘the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal,’ ... ‘the availability of alternative devices that would fulfill the same functions as a transcript’ ... provides an adequate substitute for a transcript in many eases.”
*713 523 So.2d at 506 (quoting Britt, 404 U.S. at 227, 92 S.Ct. 431). The State argues that the Court of Criminal Appeals listed several alternatives in its unpublished memorandum of which Davis did not avail himself that would have provided a substitute for the transcripts. However, a defendant does not have to prove inadequate “such alternatives as may be suggested by the State or conjured up by a court in hindsight.” Britt, 404 U.S. at 230, 92 S.Ct. 431. Further, a review of Nickerson demonstrates that Davis did not have available to him the same alternatives as did the defendant in Nickerson. There, the indigent defendant claimed that the trial court erred in refusing to provide him with a free transcript of his pretrial suppression hearings. 523 So.2d at 506. In finding that the defendant had adequate alternatives available to him, the Court of Criminal Appeals stated:
“The suppression hearings in the present case, like the prior proceedings in Britt v. North Carolina, were conducted by the same judge and with the same defense counsel as those who appeared at trial, which took place within three months of the pretrial suppression hearings.”
523 So.2d at 506. Here, however, not only did Davis’s third trial occur several years after his first and second trials, but it is also undisputed that Davis’s attorney at his third trial was not the same attorney who represented him at his first two trials. The State cites the following statement from the Court of Criminal Appeals’ unpublished memorandum: “There is nothing in the record to demonstrate that Davis’s trial counsel, Attorney [Billy J.] Sheffield [II], was prevented from, or even attempted to contact Attorney James Parkman III to obtain his notes and recollections of the first two trials.” However, there likewise is nothing in the record indicating that an attempt by Sheffield to obtain Parkman’s notes and recollections would have resulted in an adequate alternative to the requested transcripts. Under the authorities discussed, the State had the burden of demonstrating the existence of an adequate alternative, and the State did not, under the circumstances of this case, meet its burden.
Accordingly, the presumption of Britt as to the value of a trial transcript to an indigent defendant applies here, and because the State did not demonstrate that Davis had available adequate alternatives that would serve the same function as the transcripts of his prior two trials, the second factor in Britt relevant to the determination of need is satisfied. Thus, Davis was entitled to a free transcript of his earlier trials.

Conclusion

The judgment of the Court of Criminal Appeals is reversed, and the cause is remanded for that court to remand the cause to the trial court for a new trial.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, BOLIN, PARKER, and MURDOCK, JJ., concur.
SHAW, J., recuses himself.*